**Clayton JANUARY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–84–00539–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 6, 1986.

John M. Barron, Jr., William M. Vance, Bryan, for appellant.

Bill R. Turner, Todd Jermstad, Bryan, for appellee.

Before JUNELL, DRAUGHN and EL-LIS, JJ.

## OPINION

JUNELL, Justice.

Clayton January appeals a conviction for aggravated manufacture of a controlled substance. The court sentenced appellant to thirty-five years imprisonment. In his three points of error appellant contends (1) the trial court erred in denying appellant discovery of the name of the confidential informant; (2) entrapment was established as a matter of law; and (3) the evidence was insufficient to support a conviction. We affirm.

Appellant does not deny that he committed the offense of aggravated manufacture

of methamphetamine. In bringing this appeal, he relies on the defense of entrapment which is a bar against prosecution.

The facts are as follows. Robert Wilkerson, a narcotics investigator with the Department of Public Safety, testified that one day in January, 1984, he received a call from appellant, who left a message he wished to speak to Wilkerson. Wilkerson called appellant, who told the officer he wanted to set up a methamphetamine lab. A meeting was arranged, and on January 13, 1984, Officer Wilkerson and his partner, Officer Cooke, met with appellant at his home in Dallas. Appellant testified that the officers were accompanied by a confidential informant who called himself "Keith." At this meeting appellant told Wilkerson he had a partner with whom appellant would have to discuss everything. He told Wilkerson he needed phenyl–2–propoanone (P$_2$P), ether, and hydrogen chloride gas to manufacture the methamphetamine. Wilkerson said he would try to obtain the chemicals. The men discussed the operation of the lab during the meeting, and Wilkerson advised appellant he had no idea how to manufacture the drug. Later in the day Wilkerson called appellant to inform him the chemicals needed could not be obtained. Appellant said he had already gotten them and to return for another meeting that night. At this second meeting the officers were introduced to appellant's partner, Steve, and were shown the glassware and hydrogen chloride gas necessary for the operation. Wilkerson told appellant that he would furnish the P$_2$P. Appellant said Steve's brother-in-law would "cook" the methamphetamine at his home, and Wilkerson should go there alone. For safety reasons, Wilkerson refused the plan and also refused to release the P$_2$P to appellant for fear of "losing" him. Upon reaching this impasse the meeting ended. During the next two weeks several phone calls were exchanged between appellant and Wilkerson. The calls were electronically recorded and were played for the jury at trial. In one conversation appellant said he had "everything together" for the lab. In a later call appellant told Wilkerson the P$_2$P could be had for a cheaper price, and his partner wanted to buy it instead of Wilkerson's P$_2$P. However, appellant wanted to use the P$_2$P and a deer cabin in Brazos County that the officer could furnish and "cook" his own batch of methamphetamine. Calls were made in which the terms were negotiated for the use of the P$_2$P and the division of the final product. On February 3, 1984, Wilkerson received a call from appellant who said he would be in town the next day to start the manufacturing at the officer's deer cabin.

The appellant arrived in Bryan on February 4, 1984 and called Wilkerson. Officers Wilkerson and Cooke met appellant who said he brought his friends, Roger and Lucy. The officers led the way to the deer cabin outside of town. Appellant commented on what a great place it was to do the "cook." After unloading the lab equipment from their car, appellant, Roger and Lucy went inside the cabin where Wilkerson set up the lights with a generator he furnished. Officers Cooke and Wilkerson brought in bottled water from their truck, and Roger brought in an M–1 carbine and a twelve gauge shotgun.

Appellant then asked for the P$_2$P which Cooke unloaded from the truck. Appellant gave instructions to Roger and the officers on how to prepare for the manufacturing. Later, Lucy, Cooke and appellant made a trip to town to purchase methanol and baking dishes which appellant had forgotten in Dallas and were necessary for the "cook." After he returned appellant mixed the chemicals in a bottle and began the process of manufacturing the methamphetamine. However, this batch was ruined when the reaction proceeded too vigorously and the bottle cracked and broke. Appellant began another batch, controlling the ingredients and instructing the others on how to assist him. Once this mixture began to cook, appellant watched it for about an hour then said he was going to sleep in the car for a while. He advised Roger to stay with the batch and wake him if it started to react too violently.

A few hours later police rushed the camp area and arrested appellant. The contents of the bottle were analyzed by a D.P.S. chemist who testified the chemicals amounted to 400 grams or more of methamphetamine, including dilutants.

■ Appellant's first point of error argues that the trial court erred in denying appellant the discovery of the name of the confidential informant. The informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of law violations to law enforcement officers. *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). The established rule is that disclosure is not required unless the informant (1) participated in the offense; (2) was present at the time of the offense or arrest; or (3) was otherwise shown to be a material witness to the transaction or as to whether appellant knowingly committed the act charged. *Rodriquez v. State*, 614 S.W.2d 448, 449 (Tex.Crim.App.1981). Appellant has failed to demonstrate that the informant falls into any one of these categories. He did not participate in the offense; he was not present at the time of the offense or the arrest; he was not shown to be a material witness to the transaction. Officer Wilkerson testified he was introduced to appellant by the confidential informant. Officer Cooke testified the informant was present at the meetings in Dallas at appellant's home on January 13.

Appellant testified he was initially contacted by the informant on January 12, 1984 when he called appellant and introduced himself as "Keith." Keith did not want to talk over the phone so he made arrangements to meet appellant at a club that evening. At the club appellant talked in the informant's car where he asked appellant to sell him some amphetamines. Appellant replied he wasn't in the business of selling drugs. The informant asked appellant if he wanted to make some money, "about $50,000 or $100,000," by making amphetamines. Appellant said he didn't actually know anyone who could help the informant but that he would make some calls. The next day, January 13, the informant called and said he and "his friends" were on their way into town to meet with appellant, which they did. Appellant testified he was told that Cooke and Wilkerson were "in over their head from gambling" and were "anxious and insistent" to make some money. After these January 13 meetings the informant called appellant several times during the next two weeks. However, appellant never saw the informant again and made all negotiations and arrangements for the lab operation through Officer Wilkerson. There is no evidence the informant played a significant part in any of the subsequent events leading to the arrest. Appellant's reliance on *Roviaro, supra,* to support his position on disclosure is misplaced. *Roviaro* is a case in which the Government's informant was the sole participant, other than the accused, in the transaction charged. There, the informant played a material role in bringing about the offense for which the appellant was arrested. That is not the situation in our case. "Keith" was neither present during the lab operation nor instrumental in the negotiations and arrangements leading up to the manufacture. We find nothing to support any of the reasons which mandate disclosure of the name of the confidential informant. Point of error one is overruled.

■ Appellant contends in his second and third points of error the trial court reversibly erred in failing to find appellant was entrapped as a matter of law and that the evidence is insufficient to sustain a conviction because of his entrapment. Tex. Penal Code Ann. § 8.06 (Vernon 1974), provides:

(a) It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

(b) In this section "law enforcement agent" includes personnel of the state and local law enforcement agencies as well as of the United States and any person acting in accordance with instructions from such agents.

Appellant maintains he was entrapped as a matter of law because he was induced by means of illegal persuasion by Officer Wilkerson and the confidential informant to manufacture the methamphetamine. He further asserts the confidential informant was acting under the direction of the narcotics officer.

To determine the nature of police involvement, it must first be decided whether the informant was indeed acting in accordance with specific instructions from the officers to use an improper procedure to "make a case" against a particular defendant. A second area of inquiry must be examined to decide whether a general nature of control was exercised by the officer over the informant. This general control can arise when an informant has been used repeatedly, becomes experienced, and realizes how to "set up" people to make cases. Factors to be considered in this determination include the number of cases in which the particular informant has been involved and their disposition; the amount and method of compensation to the informant; the working relationship between the police officer and the informant; the informant's contacts with police officers. *Rangel v. State*, 585 S.W.2d 695, 699 (Tex.Crim.App. 1979). We find no evidence in the record which shows that any law enforcement officer specifically instructed the informant to use improper procedures to "make a case" against appellant. Further, there is no evidence of general control over the informant by Officer Wilkerson. There is nothing in the record to indicate this informant had ever "made" a case before the present action. Neither is there testimony as to the final disposition of any previous case with which the informant was involved. There is nothing to indicate the amount or method of compensation that may have been given the informant. The only evidence of the working relationship

between Wilkerson and the informant was the officer's testimony he had worked with this informant for three to four months before the informant introduced him to appellant, that the informant was present at the January 13, 1984 meetings with appellant, and appellant's testimony that the informant told him he could make $50,000 or $100,000 making drugs for some friends. In fact, Wilkerson testified that he did not know what was said to appellant by anyone working with the officer before he met appellant on January 13. This evidence clearly shows that general control was not exercised by the officer over an "experienced" informant.

Additionally, it was clear that the appellant was not induced by any improper means by Officer Wilkerson to commit the offense. Section 8.06 provides for an objective test in determining whether entrapment has occurred. Once it has been determined there was an inducement, then the trial court need only consider the nature of the State agent's activity involved, without reference to the predisposition of the particular defendant. *Norman v. State*, 588 S.W.2d 340, 346 (Tex.Crim.App.1979). Under the objective standard, prohibited police conduct includes, but is not limited to, matters such as extreme pleas of desperate illness in drug cases, appeals based primarily on sympathy, pity or close personal friendships, offers of inordinate sums of money, and other methods of persuasion which are likely to cause the otherwise unwilling person—rather than the ready, willing and anxious person—to commit an offense. *Ramos v. State*, 632 S.W.2d 688, 691 (Tex.App.—Amarillo 1982, no pet.). In applying this objective standard to our facts, it is obvious appellant was not induced by Officer Wilkerson by the use of "persuasion or other means likely to cause persons to commit the offense." The relationship between Wilkerson and appellant was in the nature of a business deal with the officer merely providing an opportunity for the appellant to manufacture methamphetamine.

On appeal the appellant asserts that the officer induced appellant with inordinant sums of money and pleas to his sympathy. However, there is nothing in the record to support these assertions. Appellant's own testimony of inducement by Wilkerson consists of nothing more than the officers needing money to pay off gambling debts, being "anxious and insistent" to do the deal, and furnishing the $P_2P$ and the location for manufacturing—both of which, according to testimony, could have been acquired elsewhere by appellant's partner. The phone calls between appellant and Wilkerson, many of which were recorded, contain no mention of threats or coercion or persuasion by the officer. In fact, in one call appellant offers $9,000 to purchase the $P_2P$ outright from Wilkerson. This does not sound like a man being induced to manufacture drugs. We are persuaded that the evidence relied on by appellant failed to conclusively establish as a matter of law that Officer Wilkerson induced the appellant to commit the offense charged. There will be few cases which establish entrapment as a matter of law; that is, where the government's inducement was so strong as to be irresistible in the eyes of any rational jury. *Donnell v. State*, 677 S.W.2d 199, 202 (Tex.App.—Houston [1st Dist.] 1984, no pet.). Appellant did not prove as a matter of law that he was entrapped; therefore, the case was properly submitted to the finder of fact, who found against appellant's contention of entrapment. It is the jury's prerogative to reject the testimony of the appellant on the issue of entrapment. *Redman v. State*, 533 S.W.2d 29 (Tex.Crim.App.1976). Sufficient evidence exists for the jury in the case before us to have properly found against appellant's defense of entrapment beyond a reasonable doubt. Even if the jury believed appellant's testimony of inducement by the officer, it was not required to find that such persuasion would have induced the objective reasonable man to commit the offense. *Donnell, supra* at 202.

The appellant also argues that the chemical seized was not, in fact, the con-trolled substance methamphetamine, but contained at least three ingredients, two of which were not controlled substances. However, the uncontroverted testimony of the D.P.S. chemist who seized and analyzed the product, established it as methamphetamine. Appellant's second and third points of error are overruled.

The judgment is affirmed.