**Bobby Lee HUBBARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05–82–00467–CR, 05–82–00718–CR and 05–82–00719–CR.**

Court of Appeals of Texas, Dallas.

March 31, 1989.

Rehearing Denied May 23, 1989.

Bobby Lee Hubbard, pro se.

Donald G. Davis, Asst. Dist. Atty., John Vance, Dist. Atty., Dallas, for appellee.

Before STEWART, ROWE and BAKER, JJ.

## ON REMAND FROM THE COURT OF CRIMINAL APPEALS

ROWE, Justice.

We consider this case on remand from the Texas Court of Criminal Appeals. Appellant Bobby Lee Hubbard appeals his conviction in one case of bribery and two cases of delivery of a controlled substance. The jury assessed punishment of eighteen years imprisonment and a $10,000.00 fine for the bribery charge and life imprisonment and a $10,000.00 fine for each of the delivery offenses.

Appellant's appointed counsel appealed his convictions to this court. During the course of that appeal, appellant became dissatisfied with his appointed counsel and moved to dismiss his appointed counsel and proceed *pro se*. Concluding that appellant was not entitled to hybrid representation, we overruled appellant's motion, considered the points of error raised by his appointed counsel, and affirmed his convictions in all three cases. *Hubbard v. State*, 668 S.W.2d 419 (Tex.App.—Dallas 1984), *rev'd*, 739 S.W.2d 341 (Tex.Crim.App.1987); *Hubbard v. State*, No. 05–82–00718–CR & No. 05–82–00467–CR (Tex.App.—Dallas Feb. 1, 1984) (not reported), *rev'd*, 739 S.W.2d 341 (Tex.Crim.App.1987). The Court of Criminal Appeals granted appellant's *pro se* petition for discretionary review. That Court concluded that, if a trial court hearing revealed that appellant's choice to proceed *pro se* was knowingly and intelligently made, appellant should be allowed to pro-

ceed *pro se* on appeal and remanded the appeal to this Court. Appellant's choice to proceed *pro se* was found to be knowingly made, and appellant filed his *pro se* brief with this Court.

Appellant asserts ten points of error in which he contends, in essence, that: (1) the evidence is insufficient to support his conviction on the bribery charge because the evidence shows entrapment as a matter of law; (2) the trial court committed fundamental error in failing to include an instruction on the defense of entrapment with regard to the offenses of delivery of a controlled substance; (3) outrageous conduct on the part of the police precludes appellant's conviction for delivery of a controlled substance; (4) appellant was rendered ineffective assistance of counsel at trial; (5) the prosecutor's statements during jury argument were so inflammatory and prejudicial as to deny appellant a fair trial; and (6) he has been denied a complete appellate record. We disagree with appellant's contentions and affirm his convictions in all three cases.

## I. FACTS

Appellant was a heroin distributor in South Dallas, and the police were arresting his heroin dealers. Appellant telephoned Investigator Jerry Wayne Foster of the Dallas Police Department and arranged to meet him in the Bryan Tower cafeteria on December 15, 1981. Foster informed other officers of this meeting and carried a small concealed tape recorder to the meeting. At the Bryan Tower Cafeteria, appellant and Foster discussed the possibility of appellant's paying Foster $2,000.00 per week. In return, Foster was to "get some heat off of [appellant's] back." Appellant and Foster reached no agreement at that meeting.

Foster met appellant and his brother at Fair Park later that day. Foster wore a concealed microphone, and Dallas Police officers recorded their meeting on audio tape. At the meeting, Foster pretended to agree

to warn appellant of impending police actions which might result in the arrest of his dealers in return for $2,000.00 per week for the first two weeks and $2,500.00 per week after that. At the end of the meeting, appellant gave Foster $500.00 with a note stating that Foster would receive an additional $1,500.00 the next Tuesday, December 22, 1981. Foster subsequently met appellant at Fair Park on December 22 and December 29, 1981, and on January 5, 1982. At the meeting on December 22, appellant gave Foster $1,600.00. Foster received $2,500.00 at the two subsequent meetings. Dallas police officers recorded these meetings on both audio and video tape.

During the course of the Fair Park meetings, Foster and his supervisors decided to try to get appellant to deliver drugs instead of money to Foster. At the Fair Park meetings, Foster and appellant discussed the possibility of appellant's providing cocaine and heroin to Foster, and appellant agreed. At two meetings at appellant's apartment, Foster and another undercover officer posing as Foster's girlfriend received small quantities of cocaine and sixty balloons of heroin.[1] These meetings were audio taped.

On the basis of these events, appellant was indicted in three cases for bribery and in two cases for delivery of heroin. The five cases were tried concurrently before a jury upon appellant's pleas of not guilty. The jury found appellant guilty of the two delivery offenses and of one of the bribery offenses, committed on December 15, 1982. He was acquitted in the other two bribery cases.

## II. ENTRAPMENT ISSUES

### A. *The Bribery Conviction*

■ In his second point of error, appellant contends that the evidence is insufficient to support his conviction for bribery. In support of this contention, appellant points out that his testimony conflicts with Foster's testimony regarding the Bryan

1. According to Foster's testimony, appellant made a "balloon of heroin" by inserting a small amount of heroin through a funnel into a regular balloon, tying the balloon off, and cutting

off the excess. This left a little ball about the size of the end of a pen. Each balloon sold for thirty to thirty-five dollars.

Tower meeting. Appellant characterizes the Bryan Tower meeting as one in which he did not offer to pay Foster $2,000.00 per week until Foster had made it plain to appellant that he wanted money. Appellant contends that the tape recording of the conversation supports his testimony regarding the Bryan Tower meeting. Appellant further contends that, because Foster rejected his offer of $2,000.00 at the Bryan Tower meeting, no offense occurred until he and Foster struck an agreement later at the Fair Park meeting. At that meeting, appellant asserts, Foster was the first to mention money, soliciting his own deal for $2,500.00. On the basis of these contentions, appellant argues that Foster solicited a bribe from appellant. Appellant urges that Foster's solicitation represents entrapment precluding appellant's conviction for bribery.[2]

At trial, Foster testified that appellant telephoned him on December 14, 1981, and requested to meet him. Foster testified that he was surprised to receive appellant's call and that appellant did not say what he wanted to talk about. Appellant called him again the next day, and they agreed to the Bryan Tower meeting. According to Foster, he did not know what appellant wanted when he agreed to the meeting. At Bryan Tower, after some initial discussion, appellant complained that the police were arresting his dealers and setting high bonds on them. Appellant had to get the dealers out of jail before they started talking, and arranging the bonds was breaking him financially. Appellant then said that there was enough money out there for everyone. At this point, Foster testified, he realized what appellant wanted. According to Foster, he played along with appellant, and eventually appellant said "How about two [thousand dollars] a week?" Foster asked if anyone else knew of their meeting. Upon being told that appellant's brother knew of the

meeting, Foster refused to agree to a deal at that meeting. He told appellant that he needed to speak to appellant's brother personally.

Insofar as is relevant to appellant's argument, appellant's testimony as to the Bryan Tower meeting differed from Foster's only in certain particulars. Appellant testified that, before he first talked to Foster, he got a message from Foster by way of some "non-snitches" stating, "Tell [Appellant] to get in touch with me; if not, I'm going to bust him or put him in jail." Appellant stated that he called Foster, Foster asked him if he was going to "snitch," and appellant refused. Because of Foster's message and the pressure that Foster was putting on appellant's dealers by arresting them and securing high bonds for their release, appellant concluded that he had no alternative but to become an informer or to bribe Foster. As a result, appellant called Foster and arranged the Bryan Tower meeting to "talk to Officer Foster and see what [Foster] could work out." Appellant testified that, at the Bryan Tower meeting, Foster pressed him to make an offer. In response to Foster's question "How much," appellant held up two fingers, indicating an offer of $2,000.00 per week. Foster refused appellant's offer, stating that he first had to talk to appellant's brother. During the conversation about appellant's brother, Foster stated that he "knew everything" about appellant.

Both appellant and Foster testified that Foster met appellant and his brother later at Fair Park and that, after some discussion, Foster stated that he would agree to the deal for $2,500.00 per week. Appellant proposed $2,000.00 per week for the first two weeks and $2,500.00 per week after that. Foster agreed, and appellant gave him $500.00 with a note reading "Other fifteen Tuesday."

---

**2.** On the basis of this argument, we do not understand appellant to contend that, at least after the Fair Park meeting, the evidence was insufficient to support a finding of all essential elements of the bribery offense charged. *See* TEX. PENAL CODE ANN. § 36.02 (Vernon Supp.1989). Instead, we interpret appellant's point of error to assert that the evidence was

insufficient to support his conviction in that the evidence shows as a matter of law that he was entrapped. *See Rodriguez v. State,* 662 S.W.2d 352, 353 (Tex.Crim.App.1984) (appellant asserts entrapment under insufficient evidence point); *Donnell v. State,* 677 S.W.2d 199 (Tex.App.— Houston [1st Dist.] 1984, no pet.).

In addition to hearing Foster's and appellant's testimony, the jury also heard audio tapes of the Bryan Tower meeting and the Fair Park meeting. The jury charge in the bribery case included an instruction on the defense of entrapment. The jury was instructed to acquit appellant if they had a reasonable doubt as to the existence of that defense. The jury returned a verdict of guilty.

Appellant relies on *O'Brien v. State*, 6 Tex.Ct.App. 665 (1879), as authority for his argument that Foster's alleged conduct of soliciting a bribe precludes appellant's conviction. In *O'Brien v. State*, O'Brien was convicted of offering a bribe to a deputy sheriff in order to secure the release of a prisoner from jail. In reversing the conviction, the court of appeals stated:

> Where the officer first suggests his willingness to a person to accept a bribe to release a prisoner in his charge, and thereby originates the criminal intent, and apparently joins the defendant in a criminal act first suggested by the officer, merely to entrap the defendant, the case is not within the provision of [the bribery statute in question.]

*Id.* at 668. Although this case provides some support for appellant's claim that the doctrine of entrapment precludes a conviction for bribery where the officer first solicits the bribe, later Court of Criminal Appeals cases questioned whether *O'Brien* represented an accurate statement of the law. *Davis v. State*, 70 Tex.Crim. 524, 158 S.W. 288 (1913); *see also Jones v. State*, 151 Tex.Crim. 519, 209 S.W.2d 613 (1948). Further, in 1973, the legislature codified the defense of entrapment in section 8.06 of the Texas Penal Code.[3] That section has remained in effect, without amendment, until the present. Therefore, section 8.06, rather than *O'Brien*, determines whether the doctrine of entrapment precludes appellant's conviction for bribery in this case.

■ Section 8.06 provides in pertinent part:

> It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

TEX.PENAL CODE ANN. § 8.06(a) (Vernon 1974). If evidence supporting the defense of entrapment is admitted, the issue of the existence of the defense is submitted to the jury with an instruction that a reasonable doubt on the issue requires acquittal. TEX. PENAL CODE ANN. § 2.03(c), (d) (Vernon 1974); *Donnell v. State*, 677 S.W.2d 199, 200 (Tex.App.—Houston [1st Dist.] 1984, no pet.). Normally the factual issue of entrapment is a question for the jury unless the accused, as a matter of law, has established that he was entrapped. *Melton v. State*, 713 S.W.2d 107, 112 (Tex. Crim.App.1986). Where the evidence on the issue of entrapment is in conflict, the issue should be submitted to the jury. *Id.*

■ In this case, Foster and appellant presented somewhat inconsistent testimony regarding the circumstances of their meetings and their interpretations of those meetings. The audio tape recording of the Bryan Tower meeting was of poor quality and very difficult to understand. Thus, assuming that appellant's testimony raised an issue as to entrapment, the issue of the existence of that defense was properly submitted to the jury. The jury, having heard the testimony of both Foster and appellant and having heard the tape recordings, was free to resolve fact issues against appellant.[4] *See Rodriguez v. State*, 662 S.W.2d 352, 355 (Tex.Crim.App.1984); *Donnell*, 677 S.W.2d at 202.

---

**3.** Act of June 14, 1973, ch. 399, § 1, 1973 Tex. Gen. Laws, 883, 897.

**4.** At oral argument, appellant pointed out that, during deliberations, the jury sent a note stating that they were in disagreement as to "who brought up the bribe the first time at Bryan Tower." Appellant complains that the jury was read only Foster's testimony with regard to that matter. The record reveals, however, that appellant's attorney and the State's attorney agreed on the portion to be read to the jury. Therefore, appellant has waived any error with regard to this matter. TEX.R.APP.P. 52(a).

Further, section 8.06 allows an acquittal based on entrapment where the actor engaged in the charged conduct "because he was induced to do so by a law enforcement agent *using persuasion or other means likely to cause persons to commit the offense.*" TEX. PENAL CODE ANN § 8.06(a) (Vernon 1974) (emphasis added). This section has been interpreted to prohibit methods of persuasion likely to cause persons generally, those not ready and willing to commit the crime, to engage in the conduct charged. *Bush v. State,* 611 S.W.2d 428 (Tex.Crim.App.1980). Thus, in the case before us, even if the jury believed appellant's testimony, it was not required to find that Foster's conduct would have caused persons generally to commit the offense. *See January v. State,* 720 S.W.2d 207 (Tex.App.—Houston [14th Dist.] 1986, no pet.); *Donnell,* 677 S.W.2d at 202.

We also reject appellant's contention that he must be acquitted because no offense was committed until after Foster had refused appellant's offer of $2,000.00 at the Bryan Tower meeting and made his own counteroffer of $2,500.00 at the Fair Park meeting. We assume, without deciding, that appellant is correct that no offense occurred at the Bryan Tower meeting. Nevertheless, the Fair Park meeting was a continuation of the negotiations begun at the Bryan Tower meeting. The fact that, at that meeting, Foster rejected the defendant's offer of $2,000.00 and proposed a higher figure does not constitute entrapment as a matter of law. *See Mustard v. State,* 711 S.W.2d 71 (Tex.App.—Dallas 1986, pet. ref'd) (deputy marshal rejected defendant's first overture and then reinstituted contact with defendant), *cert. denied,* — U.S. ——, 108 S.Ct. 265, 98 L.Ed.2d 222 (1987). Appellant's second point of error is overruled.

### B. *The Delivery Convictions*

In his ninth and tenth points of error, appellant contends that the evidence shows that he was entrapped with regard to the delivery offenses and that the trial court erred in failing to include an entrapment instruction in the jury charges in the delivery cases. Appellant also argues that Foster's outrageous conduct precludes appellant's conviction for those offenses. We will address each of these contentions in turn.

■ Appellant was tried upon two indictments alleging that, on January 6, 1981, he did "intentionally and knowingly deliver ... a controlled substance, to wit: heroin ..." to Foster and the undercover officer posing as his girlfriend. At trial, appellant testified in his own behalf and denied delivering any heroin to these officers. Appellant testified that, although he and Foster discussed appellant's providing Foster with heroin, appellant placed only "B.C. Powder and Dome," adulterants used to dilute heroin before it is sold, in the balloons that he gave them. In response to the prosecutor's questions as to whether appellant delivered or intended to deliver heroin, appellant responded that he did not.

The Court of Criminal Appeals has consistently held that the defense of entrapment is not available to a defendant who denies that he committed the offense charged. *See, e.g., Norman v. State,* 588 S.W.2d 340, 345 (Tex.Crim.App. [Panel Op.] 1979), *cert. denied,* 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980); *Stephens v. State,* 522 S.W.2d 924, 926 (Tex.Crim.App. 1975). This is because denial of the commission of the offense is inconsistent with entrapment, as entrapment assumes that the offense was committed. *Norman,* 588 S.W.2d at 345. Appellant argues, however, that because he admitted delivering "B.C. Powder and Dome" and because the evidence revealed that the substance that he delivered contained "Dome" mixed with heroin, appellant admitted the offense charged and was entitled to the entrapment defense.[5] Appellant has cited no authority in support of this theory, and we have found none. By denying that he delivered or intended to deliver heroin, appellant de-

---

**5.** Chemical analysis showed that the substance delivered contained heroin and pyrilamine. For purposes of this appeal, we assume that the substance that appellant delivered included "Dome."

nied commission of the offenses charged in the indictments. Therefore, he was precluded from asserting the entrapment defense, and the trial court did not err in failing to instruct the jury on that defense. *See Evans v. State,* 690 S.W.2d 112, 113–14 (Tex.App.—El Paso 1985, pet. ref'd).

■ Appellant also cites *Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), in support of his contention that he was entitled to an instruction on entrapment in the delivery cases. In *Mathews,* the Supreme Court held that a defendant in a federal criminal prosecution is entitled to an entrapment instruction whenever there is sufficient evidence from which a jury could reasonably find entrapment even though the defendant denies one or more elements of the offense. *Id.* 108 S.Ct. at 886. The Supreme Court first created and applied the defense of entrapment in *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). The Court based its recognition of the defense on its construction of federal criminal statutes. Since *Sorrells,* although the Court has acknowledged the possibility that government conduct might be so outrageous that due process considerations would bar prosecution, the Court has characterized the entrapment defense as "not of a constitutional dimension." *United States v. Russell,* 411 U.S. 423, 433, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). In *Mathews,* the Court based its decision on the substantive law of entrapment rather than due process or other federal constitutional principles. *See Mathews,* 108 S.Ct. at 886–90. Therefore, *Mathews* does not require that, as a matter of federal constitutional law, we extend the defense of entrapment to a defendant who denies commission of the offense with which he is charged, and the consistent decisions of the Texas Court of Criminal Appeals preclude us from engrafting the *Mathews* rule onto the Texas statutory defense of entrapment. *Smith v. State,* 733 S.W.2d 604, 604–05

(Tex.App.—Dallas 1987), *rev'd on other grounds,* 761 S.W.2d 17 (Tex.Crim.App. 1988).[6]

In addition to his entrapment argument, appellant also contends that Foster's conduct was so outrageous that due process principles forbid his conviction in the delivery cases. The Supreme Court recognized the possible existence of the defense of outrageous conduct in *United States v. Russell* when it stated, in dictum, "we may someday be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction...." *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973). In *Russell,* an undercover narcotics agent, claiming to be a representative of an organization in the Pacific Northwest interested in controlling the manufacture and distribution of methamphetamine, provided the defendant with a chemical necessary to the manufacture of the methamphetamine which formed the basis for the defendant's prosecution. The chemical provided by the government was legal but very difficult to obtain. The defendant argued that the level of the government's participation in the manufacture of the methamphetamine was so high that a criminal prosecution for the drug's manufacture violated fundamental due process principles. The Court concluded, however, that the government's conduct "[stopped] far short of violating that 'fundamental fairness, shocking to the universal sense of justice' mandated by the Due Process Clause of the Fifth Amendment." *Id.* at 432, 93 S.Ct. at 1643.

A number of cases since *Russell* have addressed defenses based on outrageous police conduct. Although the boundaries of the outrageous conduct defense remain poorly defined, the subsequent cases have clearly limited it to instances of the rarest and most egregious government misconduct. *See United States v. Pemberton,* 853 F.2d 730, 735–36 (9th Cir.1988) (reject-

---

**6.** Appellant vigorously argues specific instances of Foster's conduct which appellant claims entitle him to a defense of entrapment. Because appellant's denial of the delivery offenses pre-

vents him from asserting the defense of entrapment, we need not address whether the asserted conduct raises an issue as to entrapment.

ing defense where government agents merely activated the illegal activity rather than engineered and directed the criminal activity from start to finish); *United States v. Kelly*, 707 F.2d 1460, 1476 & n. 13 (D.C.Cir.) (suggesting that due process defense is limited to instances of "coercion, violence or brutality to the person."), *cert. denied*, 464 U.S. 908, 104 S.Ct. 264, 78 L.Ed.2d 247 (1983); *United States v. Tobias*, 662 F.2d 381, 385–87 (5th Cir.1981) (rejecting claim of outrageous conduct where government agents, in response to defendant's inquiries, suggested that he manufacture PCP, sold him the required equipment, and provided technical advice on thirteen occasions), *cert. denied*, 457 U.S. 1108, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982). We have found only two Texas cases addressing this defense. In both, the court found that the government conduct was not sufficiently outrageous to prevent the defendant's prosecution. *Beck v. State*, 741 S.W.2d 516 (Tex.App.—Corpus Christi 1987, pet. ref'd) (sale by government agents of the controlled substance which defendants were accused of purchasing); *Satterwhite v. State*, 697 S.W.2d 774 (Tex. App.—Corpus Christi 1985, pet ref'd) (police sent defendant's eleven year old nephew to purchase marijuana from defendant).

■ In the case before us, appellant asserts that the police conduct was outrageous because Foster had a duty to arrest appellant after appellant first committed bribery on December 15. Appellant argues that such an arrest would have prevented his commission of additional offenses and that Foster delayed in arresting appellant for bribery only to induce appellant to commit the delivery offenses. A criminal has no constitutional right to be arrested as soon as the offense is complete, however. *See Hoffa v. United States*, 385 U.S. 293, 309–10, 87 S.Ct. 408, 417–18, 17 L.Ed.2d 374 (1966). The undisputed evidence shows that appellant was involved in heroin distribution on a significant scale and that the police were aware of his involvement and had, at times, arrested deal-

ers working for him. Under these circumstances, the police conduct in delaying arrest on the bribery charge in order to obtain evidence for an arrest on the delivery charge was well within the bounds of acceptable police conduct. *See United States v. Belzer*, 743 F.2d 1213, 1219–20 (7th Cir. 1984), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 788, 83 L.Ed.2d 781 (1985); *United States v. Wylie*, 625 F.2d 1371, 1378 (9th Cir.1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981).

■ Appellant further asserts that the police conduct was outrageous because Foster initially broached the subject of appellant's supplying him with heroin. Appellant argues that Foster and his superiors had decided to create the delivery offenses for the purpose of arresting appellant for them. Appellant was involved in drug distribution prior to Foster's requests, however. Further, appellant was an active participant in the heroin transactions involving Foster.[7] In light of these circumstances, even if we accept appellant's assertions that Foster first requested heroin, the police involvement in these offenses does not rise to such a level that due process principles preclude appellant's conviction. *See Belzer*, 743 F.2d at 1217–18; *United States v. Tobias*, 662 F.2d at 386– 87; *see also United States v. Hampton*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1975) (rejecting outrageous conduct defense where defendant, in sales arranged by government informant, sold to government agent illegal drug which defendant alleged was supplied by informant).

■ Finally, appellant urges that Foster admitted deceiving appellant in order to obtain heroin from him. As examples of Foster's deception, appellant points out that Foster told him that Foster knew someone in Waco who could probably sell some heroin for Foster and that Foster wanted some cocaine for his girlfriend, who was a user. Foster admitted that these statements were false. Appellant also as-

---

**7.** Although appellant contended that he did not supply heroin to Foster, the jury, by its verdict of guilty, necessarily rejected this claim.

serts that Foster falsely guaranteed that appellant would not be arrested. In support of this latter assertion, appellant points to a portion of the record where Foster testified that he told appellant, in response to appellant's remark that appellant's brother was leery of coming to meet Foster, "[Y]eah, you know, I realize, you know, if I was going to do anything to you you would—I would already have done it." Appellant contends that this deception represents such outrageous conduct that due process precludes his conviction.

█ It is well established that the use of artifice and deception in conducting an undercover investigation is not precluded by due process considerations. *Belzer,* 743 F.2d at 1219. Unlike the case before us, however, cases that have addressed claims of deception have typically involved undercover investigations in which the deceived party did not know that the person with whom he was dealing was, in reality, a government agent. *See, e.g., id.* Nevertheless, the case before us is not a situation in which Foster represented or appellant believed that Foster was authorized by the police department or was acting consistently with his official duties when he sought heroin from appellant or suggested that he would not arrest appellant. This is not a case where Foster represented to appellant that appellant's actions in providing Foster heroin were condoned by the authorities. *Cf. United States v. Laub,* 385 U.S. 475, 487, 87 S.Ct. 574, 581, 17 L.Ed.2d 526 (1967) ("Ordinarily, citizens may not be punished for actions taken in good faith reliance upon authoritative assurance that punishment will not attach."); *Gifford v. State,*

740 S.W.2d 76 (Tex.App.—Fort Worth 1987, pet. ref'd) (representation by a law enforcement agent that a criminal act is legal represents entrapment as a matter of law). Instead, Foster was acting undercover as a "dirty cop." Given Foster's need to make that identity credible to appellant, Foster's conduct was not so outrageous as to preclude appellant's prosecution. *Cf. United States v. Ramirez,* 710 F.2d 535, 540–41 (9th Cir.1983) (police misdirected and misled defendant, whom they believed to be untrustworthy informant). Finally, even considering all of appellant's arguments as a whole, the police conduct in this instance was not so outrageous that it violated the fundamental fairness required by the due process clause.[8] Appellant's ninth and tenth points of error are overruled.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his third through seventh points of error, Appellant contends that he was denied effective assistance of counsel at trial. Appellant's third, fourth, and fifth points concern the guilt-innocence phase of his trial. Appellant contends that his attorney's representation was ineffective because he failed to present properly appellant's entrapment defense and failed to advise appellant of the consequences to that defense of appellant's testifying in his own behalf. Appellant also contends that his attorney failed to object to improper jury argument. Appellant's sixth and seventh points of error concern his attorney's failure to object correctly to instances of alleg-

---

8. Although appellant rests his outrageous conduct defense on those factors discussed in the text, we note that appellant also testified at trial that he was afraid to refuse Foster's request for heroin. He stated that he did not know what would happen if he refused and was afraid to find out. He also stated that he was afraid Foster might kill him. Courts have recognized that police threats and coercion may give rise to an outrageous conduct defense. *See, e.g., Belzer,* 743 F.2d at 1217. In this case, however, appellant himself testified to only two specific threats from Foster: (1) Foster's alleged initial message to appellant to contact Foster or Foster would put him in jail and (2) Foster's statement

to appellant that if word got out that Foster was accepting bribes from appellant somebody would be found dead. Not all forms of coercion or intimidation give rise to an outrageous conduct defense. *See, e.g., Ramirez,* 710 F.2d at 540 (defendant claimed that police threatened to report his parole violations in order to coerce him into becoming an informer); *United States v. Emmert,* 829 F.2d 805, 811–812 (9th Cir.1987) (agent's threats were a sort of "bluster" necessary to maintain his cover as a mobster). Therefore, we do not believe that whatever subtle intimidation that may have existed in this situation was sufficient to invoke the outrageous conduct defense.

edly improper argument during the punishment phase.[9]

## A. *The Guilt–Innocence Phase of Trial*

In evaluating appellant's claims of ineffective assistance of counsel, we are guided by the two-part standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See also Hernandez v. State*, 726 S.W.2d 53 (Tex.Crim.App.1986). First, the defendant must show that his attorney's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065. The defendant must identify the attorney's allegedly unreasonable acts or omissions. *Id.* at 690, 104 S.Ct. at 2066. Second, the defendant must show that the deficient performance prejudiced his defense. *Id.* at 687, 104 S.Ct. at 2064. That is, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694, 104 S.Ct. at 2068. The defendant must make a sufficient showing on both components of this standard in order to succeed on his claim of ineffective assistance of counsel. *Id.* at 697, 104 S.Ct. at 2069.

 In his fourth point of error, appellant claims that his attorney provided ineffective assistance because he failed to prevent appellant from testifying in his own behalf and denying delivery of heroin. Because of this testimony, appellant was prevented from raising an entrapment defense as to the delivery offenses. Appellant argues that had he received proper advice, he would not have so testified.

The record reflects, however, that appellant's decision to testify was contrary to his attorney's advice. Prior to appellant's testimony and out of the jury's presence, his attorney summarized for the court his advice and appellant's decision as follows:

The Defendant wants—has advised me that he wants to testify in this case. I am advising the Defendant not to testify in this case.

I have told the Defendant—I have given him a thumbnail sketch of the doctrine of waiver, and I have explained to him the effect of waiver on my several objections made during the course of this trial.

I have also explained to him the effect his testimony might have on the sufficiency of the evidence to sustain a conviction in all five cases, and I have tried to explain to him the effect of his testimony as it pertains and concerns my specially requested instructions and to the 31 objections to the Court's Charge that I have prepared.

I have discussed with him the defense of entrapment and the evidence with regard to the defense and whether or not in my opinion it has been raised by the evidence, and I have discussed this theory of defense in light of the other objections that I have made during the course of the trial.

The defendant's theory of the case, the sufficiency of the evidence, and the benefit that may be gained by his testimony if, in fact, he does testify, as it may be and must be weighed against the other considerations that I have mentioned.

Therefore, it is my advice at this time to my client that he give up his right to testify and not testify and refuse to testify in this case.

The trial court ascertained that appellant understood his attorney's advice, that appellant had been told that his testifying would allow the prosecutor to introduce evidence of appellant's prior convictions, and that appellant still chose to testify. Appellant then gave his attorney a list of ninety-five questions which appellant wanted his attorney to ask him. Appellant's

---

**9.** Although we discuss separately each of the actions or omissions that appellant asserts constitute ineffective assistance of counsel, we have also considered the matters raised in appellant's third through seventh points of error cumula- tively. Whether we consider appellant's points separately or cumulatively, he has failed to establish that he was denied effective assistance of counsel.

attorney, who had not previously seen the questions, stated that the first page contained questions that he would not ask and that he could not represent appellant if he was required to ask the listed questions. The trial court allowed a brief recess, and after this recess, appellant's attorney agreed to ask all but one of appellant's questions. Appellant testified and denied delivering heroin.

The ultimate decision whether to testify belongs to the defendant. *Thompson v. Wainwright*, 787 F.2d 1447, 1452 (11th Cir.1986), *cert. denied*, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987). A defendant who rejects his attorney's advice on this matter, preempts his attorney's strategy, and insists that a different strategy be followed, however, may not complain of ineffective assistance of counsel. *Id.; Duncan v. State*, 717 S.W.2d 345, 348 (Tex. Crim.App.1986). As the above excerpt from the record clearly shows, appellant testified against his attorney's advice and preempted his attorney's strategy.

Appellant argues, however, that his attorney failed properly to advise him of the implications of his testimony and that he would not have so testified had he been properly advised. Appellant has the burden of showing that his attorney's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. In reviewing appellant's claim, this court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065. Here, the record is silent as to whether appellant's attorney explicitly told him that denying the delivery offenses would preclude him from raising an entrapment defense as to those offenses. We cannot assume that, because of the record's silence, appellant's attorney did not discuss this aspect of his testimony with him. *See Hernandez v. State*, 726 S.W.2d 53 (Tex.Crim.App.1986). Further, appellant's attorney stated that he discussed the entrapment defense with appellant and advised appellant against testifying. Despite this advice, appellant chose to testify. Appellant has failed to demonstrate that his counsel's performance was deficient. His fourth point of error is overruled.

In his third point of error, appellant contends that his attorney failed to understand and present effectively the defense of entrapment. With regard to the delivery offenses, appellant's testimony, given contrary to his attorney's advice, prevented appellant from receiving a jury instruction on entrapment. We have already concluded that appellant has failed to show ineffective assistance of counsel as to his decision to testify. Because that decision to testify prevented appellant from asserting the defense of entrapment as to the delivery offenses, additional deficiencies, if any, in his attorney's presentation of that defense could not have affected the outcome of the proceeding with regard to those offenses. Therefore, as to the delivery offenses, appellant has failed to satisfy the second part of the *Strickland* test, and we need not consider the first.

Concerning the bribery offense, the record simply does not support appellant's claim that his attorney's performance fell "outside the wide range of professionally competent assistance" mandated by the sixth amendment right to counsel. *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. The record shows that appellant's attorney vigorously cross-examined Foster in an effort to emphasize those aspects of the evidence that suggested entrapment. The jury charge in the bribery case contained an instruction on entrapment. In jury argument, although appellant's attorney did not specifically discuss the entrapment instruction, he emphasized to the jury those aspects of appellant's testimony which might support a finding of entrapment. As to the bribery offense, appellant has failed to satisfy the first part of the *Strickland* test. Appellant's third point of error is overruled.

In his fifth point of error, appellant contends that he received ineffective assistance of counsel because his attorney failed to object to certain statements in the prosecutor's jury argument. During the

guilt-innocence stage of the trial, the prosecutor argued:

> I mean, we may very well come to a time where we are destroying the society now, a criminal justice system will complete it, but right now they can't lie to criminals while they're undercover. You can't take a confession out of them, but you can lie to them when you are working undercover. He thought he was dealing with a dirty policeman, but he wasn't.

Appellant contends that the prosecutor's statement that a policeman can lie when working undercover is an incorrect statement of the law and, therefore, improper argument. Appellant urges that this statement misled the jury and undercut his defense of entrapment. Therefore, appellant contends, his attorney's failure to object to this statement represented ineffective assistance of counsel. We disagree.

■ Permissable areas of jury argument include: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of opposing counsel, and (4) plea for law enforcement. *Alejandro v. State*, 493 S.W. 2d 230 (Tex.Crim.App.1973). During jury argument, both the State and the defense may discuss facts admitted into evidence and explain legal concepts. *See Givens v. State*, 554 S.W.2d 199, 201 (Tex.Crim.App. 1977). Argument which misstates the law or is contrary to the court's charge, however, is improper. *Davis v. State*, 506 S.W. 2d 909 (Tex.Crim.App.1974).

■ As our previous discussion showed, due process principles do not necessarily preclude the use of deception by undercover police officers. *Belzer*, 743 F.2d at 1219. Nor is the use of deception necessarily entrapment as a matter of law. *Cf. Rodriguez v. State*, 662 S.W.2d 352 (Tex.Crim. App.1984) (entrapment not proved as a

matter of law where police set themselves up as shop owners and put out word that they were willing to accept stolen property). Therefore, in the context of this case, the prosecutor's statement was not an incorrect statement of the law. During his jury argument in this case, appellant's attorney emphasized that Foster had lied to make his case against appellant. Appellant's attorney suggested that such conduct was improper and that it cast doubt on the credibility of the State's evidence against appellant. Thus, the prosecutor's statement was a proper response to defense counsel's argument. Because the argument was proper, appellant's attorney's failure to object to it was not ineffective assistance of counsel. *See Riles v. State*, 595 S.W.2d 858, 861 (Tex.Crim.App.1980). Appellant's fifth point of error is overruled.

### B. *The Punishment Phase of Trial*

■ In his sixth and seventh points of error, appellant contends that he received ineffective assistance of counsel due to his attorney's failure to object properly to the prosecutor's argument during the punishment stage of the trial. In reviewing these two points of error, we note that the Court of Criminal Appeals has held that the two part standard adopted in *Strickland v. Washington* is inapplicable to complaints of ineffective assistance of counsel arising out of the sentencing phase of a trial of a non-capital offense. *Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim.App.1987). Complaints arising out of the sentencing phase are to be judged according to the standard adopted in *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Crim.App.1980). *Cruz*, 739 S.W.2d at 58.[10] That standard entitles a defendant to counsel reasonably likely to render and rendering reasonably effective assistance. *Duffy*, 607 S.W.2d at 514 n. 14. The sufficiency of the attorney's assistance is

---

10. In the recent decision of *Jackson v. State*, 766 S.W.2d 518 (Tex.Crim.App.1988), the Court of Criminal Appeals appeared to apply the standard of *Strickland v. Washington* to a claim of ineffectiveness arising from the defendant's election to have the jury, rather than the court, determine punishment. *Jackson*, 766 S.W.2d at 522. The majority opinion made no mention of *Cruz*, however, and the Court also noted that, in

addition to satisfying the *Strickland* test, defense counsel's representation also satisfied the test adopted in *Duffy*. *Id.* Absent a clearer indication that the Court intended to overrule *Cruz*, we continue to rely on that case as setting out the applicable standard for reviewing claims of ineffective assistance arising out of the punishment phase of trials for non-capital offenses.

gauged by the totality of his representation of the accused. *Cruz,* 739 S.W.2d at 58.

■ At the punishment stage, appellant's attorney argued:

But I am telling you, there isn't a ripple of evidence that [appellant] is violent. He was selling junk in small quantities and it wasn't even very good junk.... I mean, the State is going to argue, I bet you, here we're shooting death into the arm. Well, sure, but drinking too much alcohol and getting sloppy drunk destroys the brain cells too.... Eventually it will kill you, just like cigarettes.

In response, the prosecutor argued:

He knows what it will do to you. He knows it destroys people. Sure, we're going to tell you that because its true. Who doesn't know that about heroin? Who doesn't know that it's death? It's death and he deals it. If that's not worth a life sentence, I don't know what is.

In his sixth point of error, appellant contends that the prosecutor's argument was outside the record and manifestly improper and prejudicial. Appellant asserts that his attorney was ineffective because he opened the door to the prosecutor's allegedly improper argument and he failed to object to that argument.

The decision whether to object to particular statements in closing argument is frequently a matter of trial strategy. *Walker v. United States,* 433 F.2d 306, 307 (5th Cir.1970). In this case, appellant's attorney was apparently following a strategy of trying to anticipate and defuse the prosecutor's remarks. Appellant's attorney might reasonably have concluded that this method, which enabled him to respond more fully to the prosecutor's statements, was more effective than an objection. A reviewing court may not second guess through hindsight the strategy employed by trial counsel. *Cruz,* 739 S.W.2d at 58. Therefore, even if we accept appellant's assertion that the prosecutor's statements were improper, a matter which we do not decide, appellant has failed to establish that his attorney rendered less than reason-

ably effective assistance. Appellant's sixth point of error is overruled.

■ Appellant's seventh point of error concerns the following exchange during the prosecutor's closing argument.

[PROSECUTOR]: If you could solve the drug problem, you would solve a lot of other problems. What do you do if you don't have the money? You might sell your body, if you're a woman. You might shoplift.

[APPELLANT'S ATTORNEY]: We object to this. There's absolutely no evidence of what people do. There might be some people who are very wealthy that live over there. There's no evidence to what people will do.

THE COURT: I will overrule part of the statement and sustain part of it.

When this case was initially appealed to this Court, appellant's attorney argued that the prosecutor's statements constituted reversible error. This Court held that any error as to the prosecutor's statements was waived because appellant's trial attorney failed to clarify what portion of the objection was overruled. Appellant now contends that he was denied effective assistance of counsel because his trial attorney failed properly to object to this argument. Appellant asserts that this argument was without support in the record and improper. Appellant further asserts that his attorney's failure properly to object allowed the jury to consider this argument without an instruction to disregard and deprived him of appellate review of the prosecutor's argument.

Other than testimony indicating that one of appellant's dealers was selling heroin to support his habit, the record contains little evidence of the effect of appellant's heroin sales on others. Nevertheless, the Court of Criminal Appeals has upheld, as proper pleas for law enforcement, arguments calling attention to the seriousness of the problem that narcotics offenses present to the community. *See Salinas v. State,* 542 S.W.2d 864, 867 (Tex.Crim.App.1976) ("I don't think I have to tell you about the problem we have in San Antonio with heroin."); *Jimenez v. State,* 421 S.W.2d 910,

913 (Tex.Crim.App.1967) (heroin is the sort of thing that can even get in the hands of school children), *cert. denied*, 391 U.S. 954, 88 S.Ct. 1859, 20 L.Ed.2d 868 (1968); *see also McGee v. State*, 689 S.W.2d 915, 919–20 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd) ("You can sentence [defendant] now or you can sentence the people out on the street"). In addition, the Court of Criminal Appeals and this Court have upheld, as proper pleas for adequate punishment and law enforcement, arguments which emphasized the seriousness of the defendant's crimes by asking the jury to draw on common knowledge regarding the effects of those crimes on the victims. *Hall v. State*, 643 S.W.2d 738, 741 (Tex. Crim.App.1983) (sexual abuse of a child); *Stone v. State*, 574 S.W.2d 85, 90 (Tex. Crim.App.1978) (same); *Miller v. State*, 666 S.W.2d 269, 275 (Tex.App.—Dallas 1984, pet. ref'd) (aggravated rape); *see also Fausett v. State*, 468 S.W.2d 92 (Tex.Crim.App. 1971). Further, courts have recognized, as matters of common knowledge, that heroin is addictive, *Cotton v. State*, 500 S.W.2d 482, 484 (Tex.Crim.App.1973), and that the manufacture, distribution, and consumption of large quantities of illicit drugs are activities fraught with violence in some form. *Lindley v. State*, 736 S.W.2d 267, 275–76 (Tex.App.—Fort Worth 1987, pet. ref'd, untimely filed). Similarly, we conclude that it has become common knowledge that the addictive qualities of heroin sometimes cause those who are addicted to resort to crimes to obtain money for its purchase. Therefore, the prosecutor's argument, asking the jury to draw on this common knowledge in evaluating the seriousness of the defendant's offense, represents a proper plea for adequate punishment and law enforcement.

We recognize that the Court of Criminal Appeals has held arguments concerning the effects of narcotics offenses on others to be improper. These cases have involved, however, either flat assertions of fact regarding the effects of the defendant's activities, unsubstantiated by the evidence, *Mayberry v. State*, 532 S.W.2d 80, 85 (Tex. Crim.App.1976) (people will do anything to get heroin); *White v. State*, 492 S.W.2d 488 (Tex.Crim.App.1973) (sixty percent of crime attributable to narcotics), or attempts to impute to the accused additional sales of narcotics apparently not supported by the record, *Thomas v. State*, 527 S.W.2d 567, 568 (Tex.Crim.App.1975); *Rodriquez v. State*, 520 S.W.2d 778 (Tex.Crim.App.1975). In contrast to *White* and *Mayberry*, the argument of which appellant complains contains no definite and certain assertions of fact as to the effect of heroin on others' behavior.[11] Further, the evidence in this case shows that appellant delivered heroin to Foster for further distribution in Waco. Thus, unlike *Thomas* and *Rodriquez*, the record in this case clearly indicates that appellant intended his delivery of heroin to reach individuals beyond Foster. Therefore, these Court of Criminal Appeals cases do not control the disposition of the case before us.

Because this portion of the state's argument was not improper, defense counsel's failure properly to object to it does not constitute ineffective assistance of counsel. *Riles*, 595 S.W.2d at 861. Moreover, even if the prosecutor's statements were improper, appellant has failed to establish that he received ineffective assistance of counsel because of his attorney's failure to object properly. The sufficiency of counsel's assistance is determined by reviewing the totality of his representation of the accused. *Cruz*, 739 S.W.2d at 58. Where

---

**11.** The State notes in its brief that immediately prior to the statements reproduced in this opinion, the prosecutor stated, "What will a heroin addict do for heroin? Anything. He'll do anything. Right?" Appellant did not assert error as to this statement in his original brief. The State concludes, however, that this statement is not substantially different from the statement which the Court of Criminal Appeals found improper in *Mayberry*. In a supplement to his brief, appellant urges that his attorney's failure properly to object to this assertion further supports his claim of ineffective assistance of counsel. Given the advances in public knowledge regarding the effects of heroin addiction, we are not convinced that the prosecutor's assertion is improper. Nevertheless, we consider defense counsel's failure to object as part of our review of the totality of representation with regard to appellant's ineffective assistance claim.

the errors are sufficiently egregious, an accused may be denied effective assistance of counsel because of isolated errors or because of errors confined to the punishment phase of trial. *See, e.g., Ex parte Scott,* 581 S.W.2d 181 (Tex.Crim.App.1979) (counsel incorrectly advised defendant to stipulate to prior offenses alleged in the indictment); *May v. State,* 660 S.W.2d 888 (Tex.App.—Austin 1983) (neglect of counsel precluded jury from considering probation), *aff'd,* 722 S.W.2d 699 (1984). In general, however, isolated errors are not sufficient to sustain a claim of ineffective assistance. *Moore v. State,* 700 S.W.2d 193, 205 (Tex. Crim.App.1985), *cert. denied,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 289 (1986).

Appellant cites *Vela v. Estelle,* 708 F.2d 954 (5th Cir.1983), *cert. denied,* 464 U.S. 1053, 104 S.Ct. 736, 79 L.Ed.2d 195 (1984), in support of his argument that he was denied effective assistance of counsel. Although in *Vela* the court found that the defendant received ineffective assistance solely because of errors occurring during the punishment phase, that case involved numerous failures properly to object to prejudicial testimony and argument. In the case before us, however, appellant has identified only two instances where his attorney failed to preserve error as to an arguably improper portion of the prosecutor's argument. Reviewing the record as a whole, we note that appellant's attorney consulted with appellant prior to trial, filed meaningful pretrial motions, actively participated in voir dire of the jury, vigorously cross-examined the State's witnesses, objected to the court's charge, requested instructions, and presented argument on behalf of appellant. During the punishment stage appellant's attorney may have failed to object or to preserve error as to some instances of arguably improper jury argument. Nevertheless, appellant's attorney presented argument in behalf of appellant. Further, in addition to the instance cited by appellant, defense counsel objected twice to the prosecutor's argument during the punishment stage. In both instances, his objections were sustained, and he properly requested a mistrial. On this record, we conclude that the totality of defense counsel's representation was effective. Appellant's seventh point of error is overruled.

## IV. JURY ARGUMENT

██ Appellant's eighth point of error concerns the following statements, which the prosecutor made in jury argument during the punishment phase of trial:

[PROSECUTOR]: He says he's not a violent person. Not a violent person? He says he shot somebody for messing with his woman. That's his direct testimony. That's not a violent person just because he shoots somebody, is it?

[APPELLANT'S ATTORNEY]: But, Your Honor, the law excused him too. He was not guilty.

THE COURT: Excuse me. This is argument, go ahead.

[PROSECUTOR]: Good point, because the witnesses didn't show up. I wonder why.

[APPELLANT'S ATTORNEY]: Your honor, that's outside the record.

THE COURT: Sustained.

[APPELLANT'S ATTORNEY]: Ask for an instruction.

[PROSECUTOR]: He testified to that.

[APPELLANT'S ATTORNEY]: It's so harmful—

THE COURT: Disregard that last statement.

[APPELLANT'S ATTORNEY]: Your Honor, we feel it's so harmful and prejudicial stating it outside of the record of a new and harmful fact that no instruction can cure it and we ask for a mistrial.

THE COURT: Overrule the mistrial.

[APPELLANT'S ATTORNEY]: Exception.

[PROSECUTOR]: The Defendant testified that the witnesses didn't show up. You were sitting here and you heard it.

When we first considered appellant's convictions on appeal, appellant's appointed counsel complained of the prosecutor's statement, "Good point, because the witnesses didn't show up. I wonder why." He contended that this argument was outside the record. He argued that the prosecutor was insinuating to the jury that ap-

pellant was a violent man who had been acquitted of a prior charge of shooting a man only because appellant had frightened the witnesses into not appearing. Observing that appellant had admitted the shooting in his testimony, this Court concluded that any possible harm resulting from the prosecutor's statement was cured by the trial court's instruction to disregard. *Hubbard v. State*, 668 S.W.2d 419 (Tex.App.— Dallas 1984), *rev'd on other grounds*, 739 S.W.2d 341 (Tex.Crim.App.1987); *Hubbard v. State*, No. 05–82–00718–CR & No. 05–82–00467–CR (Tex.App.—Dallas Feb. 1, 1984) (not reported), *rev'd on other grounds*, 739 S.W.2d 341 (Tex.Crim.App. 1987). Appellant, in his current brief, presents additional reasons why the quoted portion of the prosecutor's argument is reversible error.

Appellant asserts that, following the shooting, he was convicted of one offense but acquitted of another. He contends that his testimony and his statements on the videotape show that the witnesses failed to show up for the trial in which he was found guilty rather than the trial in which he was acquitted. Appellant contends that the prosecutor's statement, with its implication that the witnesses failed to appear at the trial where appellant was acquitted, was false, and that the prosecutor, because he heard appellant's testimony and his statements on the videotape, knew that the argument was false. Appellant argues that, because of this alleged prosecutorial misconduct, he was denied due process of law.

At trial, appellant testified:

And then—well I got bailed out, and I moved out from my old lady, she was staying there keeping my son, and when I came back there, I found out they was messing around, and I told him to leave, and the dude told me not to leave or never come again, and I told him, "Let's settle it", and him and his friends got together, and him four, and me one, and I was found not guilty—and he was living in my house—for the shooting, the other witnesses didn't show up for the

other case, and that's what he gave me 246 for.[12]

A careful reading of appellant's testimony suggests that he was referring to two different cases: one in which he was found guilty and a different one in which the witnesses failed to appear. Nevertheless, appellant's statement is confusing, and this meaning may not have been apparent to someone merely hearing the testimony in court.

Appellant argues, however, that this meaning was apparent to the prosecutor because the prosecutor also heard appellant's description of the events in question on the videotape of the December 29th meeting. Appellant contends that the record shows that the prosecutor had listened to the relevant portion of the tape because the prosecutor identified it to the trial court as involving discussion of extraneous offenses. Our review of audio and video tapes of the December 29th meeting shows that a band was practicing nearby during parts of the conversation and that appellant's statements are often difficult to understand. Careful listening shows that appellant's statements are consistent with his contention that the witnesses were not available for the proceeding where appellant was found guilty. On the tapes, however, appellant's narrative regarding the previous offenses is complex, and his statements are often difficult to understand. We cannot conclude, therefore, that someone without prior knowledge of appellant's claim would necessarily realize from hearing the tape that it was at the proceeding where appellant was found guilty that the witnesses failed to appear.

■ Counsel in argument may draw from the evidence all inferences that are legitimate, reasonable, and fair, and he will be afforded wide latitude in this respect as long as his argument is supported by the evidence and is in good faith. *Griffin v. State*, 554 S.W.2d 688, 690 (Tex.Crim.App. 1977). Appellant has the burden of show-

---

**12.** Appellant apparently contends in his brief that this statement was incorrectly reported in the statement of facts. After a hearing to deter-

⌐ mine the accuracy and completeness of the statement of facts, however, the trial court specifically rejected this claim.

ing that the prosecutor acted in bad faith. *See Hernandez v. State*, 532 S.W.2d 612, 614 (Tex.Crim.App.1976); *Gentry v. State*, 629 S.W.2d 77, 80 (Tex.App.—Dallas 1981), *aff'd on other grounds*, 640 S.W.2d 899 (Tex.Crim.App.1982). He has failed to meet that burden. The prosecutor's inference that appellant was acquitted because the witnesses failed to appear may have been incorrect. Nevertheless, neither appellant's testimony nor the videotape was so clear that we must conclude that, under the circumstances, the prosecutor knew when he made his statements to the jury that they were false. Nor does the record reveal a continuing course of prosecutorial misconduct or other circumstances suggesting that the prosecutor's misstatement was deliberate. Further, as we have previously held, the trial court's instruction to disregard was sufficient to cure any harm resulting from the prosecutor's statements during argument. *Hubbard*, 668 S.W.2d at 422; *see also Stone v. State*, 583 S.W.2d 410 (Tex.Crim.App.1979) (court's instruction that jury heard evidence and would determine facts sufficient to cure any error from prosecutor's possible misstatement of testimony).

Appellant points out that the trial court gave no instruction to disregard the prosecutor's last statement, "The Defendant testified that the witnesses didn't show up. You were sitting here and you heard it." Appellant's counsel did not object to this last statement, however. In general, such an objection is necessary to preserve a complaint for appellate review. *Miller v. State*, 741 S.W.2d 382, 391 (Tex.Crim.App. 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2835, 100 L.Ed.2d 935 (1988). An exception to this general rule may exist, however, if the prosecutor's argument so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Id.* In this case, however, we have already concluded that the prosecutor's statements were not so improper that they could not be cured by an instruction to disregard. Reversible error occurs only when statements to the jury are so extreme, are manifestly improper, inject new and harmful facts, or violate a mandatory statutory provision, so that they deprive the accused of a fair and impartial trial. *Id.* at 392. On this record, we cannot conclude that the prosecutor's statements were so prejudicial as to represent a violation of due process or to deny appellant a fair and impartial trial. Appellant's eighth point of error is overruled.

## V. APPELLATE RECORD

In his first point of error, appellant contends that he was denied a complete appellate record, depriving him of his right to appeal. Appellant contends that the appellate record is incomplete in two respects. First he asserts that it lacks the jury charges pertaining to the two cases of bribery where he was acquitted. Second, he argues that it is incomplete because he has not had an opportunity to review the audio or video tapes introduced into evidence at trial nor has the trial court furnished him a transcript of these tapes.

■ We first address appellant's contentions regarding the missing jury charges. Appellant asserts that he needs the jury charges from the cases in which he was acquitted to determine whether they contained an instruction on entrapment. Appellant argues that an entrapment instruction would show that the trial court acknowledged that the evidence raised this defense as to these bribery offenses. Because these offenses closely preceded the delivery offenses and because they involved the same course of police conduct, appellant apparently contends that such an instruction in the bribery cases would support his entitlement to an instruction in the delivery cases. We disagree. Even if we assume that the missing jury charges included instructions on entrapment, appellant's denial of the delivery offenses precludes an entrapment instruction as to those offenses.

We now turn to appellant's contentions regarding the audio and video tapes. At trial the State introduced audio and/or video tapes of several telephone conversations and seven meetings between Foster and appellant. At these meetings, Foster and

appellant negotiated the bribe and the delivery of heroin and appellant delivered the bribe money and heroin to Foster. A video or audio tape of each meeting was played for the jury.

The trial court ordered that all tapes admitted into evidence be forwarded to this court as part of the appellate record. Therefore, the appellate record is not incomplete. *See Merriweather v. State*, 501 S.W.2d 887, 892 (Tex.Crim.App.1973); *Johnson v. State*, 715 S.W.2d 402, 404 (Tex. App.—Houston [1st Dist] 1986), *pet. ref'd*, 738 S.W.2d 287 (Tex.Crim.App.1987). Appellant complains, however, that the trial court, at a hearing to consider his objections to the appellate record, refused to allow him to review the tapes or to furnish him with a court-prepared transcript of the tapes. Appellant contends that without a court-prepared transcript and the opportunity to review the tapes, he cannot determine if the tapes were altered.

Before trial, appellant presented *pro se* motions to the trial court. In these motions, appellant requested information concerning the chain of custody of the tapes and whether the tapes had been "proof tabbed." At that time appellant described "proof tabbing" as removing the plastic on the tapes to prevent tampering. Appellant stated that, if the prosecutor did not know if the tapes had been "proof tabbed," he would like to subpoena an expert to make this determination. The trial court stated that it would instruct the prosecutor to determine if such a procedure had been performed. The court did not explicitly rule on appellant's request for expert examination. Appellant later restated his request, and the trial court again did not rule on it.[13] Therefore, the record presents nothing for review regarding appellant's request for expert examination of the tapes. *See Griffin v. State*, 481 S.W.2d 838, 840 (Tex.Crim.App.1972).

At trial, the State's witnesses testified that there had been no alterations to each tape introduced into evidence. The witnesses also testified as to whether they had broken plastic tabs on the tape housing to prevent accidental erasure or re-recording of the tapes. In addition, defining "proof tabbing" as expert examination to detect tampering, appellant's attorney elicited testimony on voir dire examination of these witnesses showing that the tapes had not been "proof-tabbed." Appellant's attorney objected to admission of the tapes on the ground that no proper predicate had been laid and that the tapes had not been "proof tabbed." Appellant's attorney specifically contended that the showing of "proof tabbing" was part of the State's burden.

■ In *Edwards v. State*, 551 S.W.2d 731, 733 (Tex.Crim.App.1977), the Court of Criminal Appeals set forth a seven part predicate for admission of audio tape recordings. In *Roy v. State*, 608 S.W.2d 645, 649 (Tex.Crim.App.1980), the Court adopted the *Edwards* predicate for admission of video tape recordings. Neither *Edwards* nor *Roy* require the State to present expert testimony that the tapes have been examined and found free of alterations. *See Edwards*, 551 S.W.2d at 733–34. In this case, the state's witnesses testified concerning the means taken to preserve the tapes and testified that the tapes had not been altered. Therefore, the trial court did not err in admitting the tapes over appellant's objection that they had not been "proof tabbed."

■ Further, appellant was present at trial and heard every tape that was played for the jury. Nevertheless, appellant did not testify that the tapes had been altered. Although, through his objections and voir dire examination, appellant expressed concern that the tapes *could have been* altered, he made no explicit claim and presented no affirmative evidence that the tapes *had been* altered. Nor did he present again his request that the tapes be examined by an expert. Appellant cannot present in this court evidence of tampering

---

**13.** Even if we interpret the trial court's actions as a denial of appellant's request for expert examination of the tapes, appellant has failed to show how he was harmed by the trial court's denial of his request. *See Quinones v. State*, 592 S.W.2d 933, 942–43 (Tex.Crim.App.), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980).

that he did not present in the trial court. *See Williams v. State*, 441 S.W.2d 853, 854 (Tex.Crim.App.1969); *Deloro v. State*, 712 S.W.2d 805, 808 (Tex.App.—Houston [14th Dist.] 1986, no pet.). Therefore, the trial court did not err in refusing to furnish appellant a court-prepared transcript or in refusing to allow appellant to review the tapes for purposes of detecting evidence of tampering.

 In support of his need to review the tapes or to obtain a court prepared transcript of them, appellant also asserts that the transcripts prepared by Foster were inaccurate representations of the conversations between them. Appellant's attorney was furnished with copies of Foster's transcripts before trial. Using the transcripts to refresh his memory, Foster testified to the substance of the recorded conversations, but the transcripts apparently were not given to the jury. Appellant does not contend on appeal that the trial court erred in allowing this use of the transcripts or Foster's testimony. In addition to Foster's testimony, the jury heard the tapes and appellant's testimony regarding the conversations.[14] The credibility of appellant's and Foster's testimony and the weight to be given the evidence were matters for the jury as the trier of fact. *Pizano v. State*, 489 S.W.2d 284, 285 (Tex.Crim. App.1973). Appellant's first point of error is overruled.

Having considered and rejected all of appellant's points of error, we affirm the trial court's judgment.

---

14. Appellant's attorney received Foster's transcripts before trial. During trial, he presented only one objection regarding inaccuracies in the transcript. That objection, which went to the ability of appellant to anticipate and object to a hearsay statement contained on the tape but not shown on the transcript, was sustained by the trial court, and appellant does not press this issue on appeal.