ACCEPTED
01-14-00862-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/13/2015 7:29:20 PM
CHRISTOPHER PRINE
CLERK

NO. 01-14-00862-CR

In The Court Of Appeals Of Texas
For The
First Supreme Judicial District Of Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/13/2015 7:29:20 PM
CHRISTOPHER A. PRINE
Clerk
VOID K

NO.1364962

IN THE 178th JUDICIAL DISTRICT COURT

OF HARRIS COUNTY, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/13/2015 7:29:20 PM
CHRISTOPHER A. PRINE
Clerk

The Honorable David Mendoza, presiding

_____

Andre Demont Thompson

                                Appellant

VS

THE STATE OF TEXAS

                                Appellee

_____

## APPELLANT'S ANDERS BRIEF
## IN SUPPORT OF MOTION TO WITHDRAW

_____

GLENN J. YOUNGBLOOD
Appellant's Attorney
5555 West Loop South, Ste. 395
(713) 432-1013
(713) 432-1013 FAX
SBOT # 22217400
glenlaw@comcast.net

ORAL ARGUMENT NOT REQUESTED

**TABLE OF CONTENT**

TABLE OF CONTENT ..................................................................................... 2

IDENTIFICATION OF THE PARTIES ........................................................ 8

STATEMENT OF CASE .............................................................................. 9

SUMMARY ................................................................................................. 9

ANDER'S BRIEF CHECKLIST ITEMS ..................................................... 10

STATEMENT OF FACTS ............................................................................ 18

    STATE'S WITNESSES .......................................................................... 18

        *Houston Police Department Officer Rafael Flores* ............................. 18

        *Houston Police Department Officer Adrienne King* ............................. 19

        *Houston Police Department Officer Ivan Ullo* ...................................... 20

        *Jackie Bergeron* ................................................................................ 21

        *Juan Garcia* ...................................................................................... 24

        *Houston Police Department Officer Bob Brown* .................................. 24

ISSUES PRESENTED .................................................................................. 25

    FRIVILOUS APPEAL ........................................................................... 25

    ISSUE NUMBER ONE ........................................................................... 26

        *Argument and Authority* ..................................................................... 26

Injecting Unsworn Testimony ................................................ 26

Mistrial.......................................................................... 27

ISSUE NO. 2 ................................................................... 32

*Argument and Authority*................................................. 32

IMPROPER JURY ARGUMENT .................................. 32

General........................................................................... 32

Prosecutor's Opinion/Bolstering...................................... 34

Striking at Appellant over the shoulder of counsel ............ 36

Name Calling.................................................................. 39

Ineffective Assistance of Counsel .................................... 43

CONCLUSION................................................................. 46

*Issue No. 1 Denial of Mistrial*....................................... 46

*Issue No. 2 Ineffective Assistance- Failure to Object to Improper*

*Argument*....................................................................... 47

## LIST OF AUTHORITIES

**CASES**

*Alberts v. State,* 302 S.W.3d 495 (Tex.App.-Texarkana 2009, no pet.) .......................... 46

*Anders v. California*, 386 US 738,744, 18 LEd.2d 493, 87  S Ct 1396 (1967 .................. 7

*Archie v. State, 221 S.W.3d 695,(Tex. Crim. App. 2007)*.................................................. 26

*Borjan v. State, 787 S.W.2d 53 (Tex. Crim. App. 1990)* ..................................................... 31

*Brown v. State*, 270 S.W.3d 564, (Tex. Crim. App. 2008) .................................................. 31

*Cannon v. State, 668 S.W.2d 401 (Tex. Crim. App. 1984)*.................................................. 41

*Coble v. State*, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993)............................................. 31

*Currie v. State*, 516 SW 2d 684, 685 (Tex. Cr. App. 1974); ............................................... 7

*Dinkins v. State*, 894 S.W.2d 330 (Tex. Crim. App. 1995).................................................. 28

*Evans v. State, 60 S.W.3d 269 (Tex.App.-Amarillo 2001*, pet. ref'd) ............................... 45

*Ex parte Chandler, 182 S.W.2d 350 (Tex. Crim. App. 2005)* ............................................ 42

*Ex parte Raborn, 658 S.W.2d 602  (Tex.Cr.App.1983)* ...................................................... 43

*Fernandez v. State*, 564 SW2d 771 (Tex. Crim. App. 1978)............................................... 16

*Gaddis v. State,* 753 S.W.2d 396 (Tex.Crim.App.1988) ..................................................... 40

*Garcia v. State,* 57 S.W.3d 436 (Tex.Crim.App.2001) ....................................................... 45

*Gardner v. State*, 730 S.W.2d 675 (Tex. Crim. App. 1987).................................. 28, 29, 44

*Gorman v. State,* 480 S.W.2d 188 (Tex.Crim.App.1972) .................................................... 36

*Harris v. State*, 122 S.W.3d 871, (Tex. App.--Fort Worth 2003, pet. ref'd).................... 30

*Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) ........................................... 25

*High v. State*, 573 SW2d 807, 813 (Tex. Cr. App. 1978). .................................................. 7

*Hubbard v. State, 770 S.W.2d 31 (Tex.App.-Dallas 1989, pet. ref'd))*............................... 45

*Jackson v. State, 766 S.W.2d 504 (Tex.Cr.App.1985)* ...................................................... 43

*Johnson v. State*, *83 S.W.3d 229, (Tex. App.-Waco 2002*, pet. ref'd)............................... 27

*Jordan v. State, 646 S.W.2d 946, (Tex. Crim. App. 1983)*................................................ 31

*Kuhn v State, 393 S.W.3d 519 (Tex.App.-Austin 2013)* .................................................. 45

*Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)................................................ 25

*Linder v. State, 828 S.W.2d 290, (Tex. App.-Houston [1st Dist.] 1992*, pet. ref'd) .......... 28

*Logan v. State, 698 S.W.2d 680, (Tex.Crim.App.1985)* .................................................. 41

*Longoria v. State, 154 S.W.3d 747(Tex. App.-; Houston [14th Dist.] 2004*, pet. ref'd) ... 27

*McCoy v Court of Appeals of Wisconsin, Dist. 1, 486 U.S. 429, 108 S.Ct. 1895, 1902, 100*

   L.Ed. 2d 440 (1988).......................................................................................................... 23

*Mendez v. State, 138 S.W.3d 334 (Tex. Crim. App. 2004)*........................................... 32, 45

*Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App.1981) (op. on reh'g)................ 33

*Miniel v. State, 831 S.W.2d 310, 323 (Tex. Crim. App. 1992)*........................................... 42

*Moore v. State, 999 S.W.2d 385, (Tex. Crim. App. 1999)*................................................ 27

*Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998) ................................................ 26

*Nevels v. State*, 954 S.W.2d 154, (Tex. App.--Waco 1997, pet. ref'd) ............................ 35

*Nixon v. State,*

   572 SW2d 699 (Tex. Crim. App. 1978) ...................................................................... 16

*Ocon v. State, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009)*............................................ 25

*Orona v. State, 791 S.W.2d 125, (Tex.Crim.App.1990)*.................................................... 36

*Perez v. State*, 187 S.W.3d 110, (Tex. App.-; Waco 2006, no pet.)................................. 28

*Stafford v. State, 813 S.W.2d 503 (Tex. Crim. App. 1991)* .............................................. 41

Strickland v. Washington, 466 U.S. 668 (1984*)*............................................................... 41

*Temple v. State, 342 S.W.3d 572 (Tex. App.--Houston [14th Dist.] 2010)* ...................... 31

*Temple v. State, 342 S.W.3d 572 (Tex.App.-Houston [14 Dist.] 2010)* ............................ 30

*Thompson v. State, 9 S.W.3d 808 (Tex. Crim. App. 1999)* ................................................. 42

Thompson, 9 S.W.3d at 813) ................................................................................................ 42

*v. State, 894 S.W.2d 330 (Tex.Crim.App.), cert. denied, 516 U.S. 832, 116 S.Ct. 106, 133*

   *L.Ed.2d 59 (1995)* ........................................................................................................ 36

*Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)* ........................................... 26

*Wesbrook v. State*, 29 S.W.3d 103 (Tex. Crim. App. 2000) ......................................... 28, 31

*Williamson v. State*, 771 S.W.2d 601 (Tex. App.--Dallas 1989, pet. ref'd) ...................... 32

*Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)* ............................................. 25

*Young v. State, 137 S.W.3d 65, (Tex. Crim. App. 2004)* ............................................. 32, 45

*Young v. State*, 137 S.W.3d 65, (Tex. Crim. App. 2004) ................................................... 27

## STATUTES

## RULES

*Code Crim. Proc. Ann. art. 42.12, § 21(d) (Vernon Supp. 2008)* ...................................... 40

TEX. CODE CRIM. PRO. ART. ART 1.04 ....................................................................... 29

## CONSTITUTIONAL PROVISIONS

*Tex. Const. Art. 1, § 10* ..................................................................................................... 40

THE TEX. CONST. ART. 1 §§ 13,19 ................................................................................. 29

*U.S. Const. amend. VI* ........................................................................................................ 40

**IDENTIFICATION OF THE PARTIES**

Pursuant to Tex.R.App.P. 38.1(a), listed below is a list of the interested parties:

| | | |
|---|---|---|
| 1. | Appellant: | Mr. Andre Thompson, 01959294<br>Holiday Unit<br>295 IH-45 North<br>Huntsville, TX 72320 |
| 2 | Appellate counsel: | Glenn J. Youngblood<br>Attorney at Law<br>5555 South Loop West, Ste. 396<br>Bellaire, Texas 77401<br>(713) 432-1013<br>(713) 574-3042 FAX<br>SBOT: 22217400<br>glenlaw1@comcast.net |
| 3 | Trial Judge: | Hon. David Mendoza<br>1201 Franklin St., 19th Fl.<br>Houston, Tx 77002 |
| 4 | Complainant: | |
| 5 | Defendant'sTrial Counsel: | Jules Johnon & Eric Davis<br>Public Defender's Office<br>1201 Franklin St.<br>Houston, TX 77002<br>SBOT :24041199 & 24003493 |
| 6 | State's Trial Counsel | Mr. David Abrams<br>1201 Franklin St., Ste. 600<br>Houston, TX 77002<br>SBOT: 24063679<br>(713) 755-6916 |
| 7 | Appellate Counsel for the State: | Alan Curry<br>Assistant District Attorney<br>1201 Franklin, Suite 600<br>Houston, TX 77002<br>Curry_alan@dao.hctx.net |

**STATEMENT OF CASE**

The Appellant, Andre Demont Thompson was indicted on 1/16/2013 by a Harris County Grand Jury on a charge of Murder, a First degree felony, alleged to have occurred on 10/5/2012. Upon Appellant's plea of not guilty the case was tried before a jury on October 1, 2014 through October 8, 2014. The jury found the Appellant guilty as charged and after hearing the evidence and argument during the punishment phase of the trial sentenced Appellant to 30 years years confinement in the Institutional Division of the Texas Department of Criminal Justice.

Appellant gave timely and proper Notice of Appeal on 10/8/2014

**SUMMARY**

This Brief is prepared pursuant to the requirements for frivolous appeals as set forth in Anders v. California, 386 US 738,744, 18 LEd.2d 493, 87 S Ct. 1396 (1967); Currie v. State, 516 SW 2d 684, 685 (Tex. Cr. App. 1974); and High v. State, 573 SW2d 807, 813 (Tex. Cr. App. 1978). Appellate counsel sets forth two issue(s) dealing with 1) the Court's abuse of discretion in denying Appellant's Motion for mistrial and 2) trial counsel's Ineffective Assistance for failure to object to several instances of improper jury argument during the guilt/innocence and punishment phases of the trial.

**ANDER'S BRIEF CHECKLIST ITEMS**

As required by the Guidelines for filing an Anders Brief the checklist of items and comments are set forth below in conformance with said guidelines for Jury or Bench Trial.

**1.** *Sufficiency of the indictment.*

The Appellant was properly true billed on January 6, 2014. The Indictment is in compliance with the requirements of Tex. Code Crim. Pro. Art. 21.01 *et.seq.*

**2.** *Any adverse pretrial rulings affecting the course of the trial, including but not limited to rulings on motions to suppress, motions to quash, and motions for a speedy trial.*

Pretrial motions and rulings filed by the parties:

| Clerk's Record. | Motion | Ruling | Filed by |
|---|---|---|---|
| 118 | Motion For Discovery | None; | Pro Se |
| 40 | Discovery Order | Granted | Court's Standard Order |

**3.** *Any adverse rulings during trial on objections or motions, including but not limited to objections to admission or exclusion of evidence, objections premised on prosecutorial or judicial misconduct, and motions for mistrial.*

| Reporter's Record. | Objection | Ruling | Party Objecting |
|---|---|---|---|
| Vol 2/13 | Improper commitment question Motion For Discovery | Overruled | Defense |
| Vol 2/40 | Speculation | Granted | Defense |
| Vol 4/47 | Asked and Answered | Overruled | Defense |
| Vol 4/53 | Leading | Overruled | Defense |
| Vol4,/54 | Relevance | Overruled | Defense |
| Vol4/57 | Nonresponsive | Overruled | Defense |
| Vol4/63 | Asked and answered | Sustained | State |
| Vol4/63 | Asked and answered | Sustained | State |
| Vol4/63 | Asked and answered | Sustained | State |
| Vol4/71 | Relevance | Overruled | Defense |
| Vol4/72 | Improper opinion evidence | Overruled | Defense |
| Vol 4/120 | Relevance | Overruled | Defense |
| Vol4/133 | Speculation | Overruled | Defense |

| | | | |
|---|---|---|---|
| Vol4/134 | Relevance | Overruled | Defense |
| Vol4/135 | Legal conclusion | Overruled | Defense |
| Vol4/170 | Power Point presentation may contain hearsay | Overruled | Defense |
| Vol4/186 | narrative | Overruled | Defense |
| Vol4/232 | narrative | Overruled | Defense |
| Vol4/233 | Witness belief not relevant | Overruled | Defense |
| Vol4/ 236 | Relevance | Overruled | Defense |
| Vol5/101 | Improper argument -think that Andre is you | Sustained | State |
| Vol5/131 | (during bench conference) Victim Impact Statement | Overruled | Defense |
| Vol5/133 | Renew previous objection | Sustained | Defense |
| Vol5/133 | Relevance and improper victim impact testimony | Overruled | Defense |
| Vol5/141 | Relevance | Overruled | Defense |
| Vol6/34 | Improper Argument | Overruled | Defense |
| Vol5/35 | Improper argument | Overruled` | Defense |
| Vol5/36 | Improper-calls for law enforcement | Overruled | Defense |
| Vol6/7 | Relevance | Sustained | State |

| | | | |
|---|---|---|---|
| Vol6/34 | Improper argument | Overruled | Defense |
| Vol6/35 | Improper argument | Overruled | Defense |
| Vol6/36 | Calls for law enforcement | Overruled | Defense |

**4.** *Any adverse rulings on post-trial motions, including motions for a new trial.*

None

**5.** *Jury selection*

Jury selection was without controversy.

**6.** *Jury instructions*

There were no objections to the jury charge or instructions. The defense requested and received a charge on sudden passion.

**7.** *Sufficiency of the evidence, including a recitation of the elements of the offense(s) and facts and evidence adduced at trial relevant to the offense(s) upon which conviction is based.*

The evidence produced by the State consisted of testimony by:

Jackie Bergeron who stated that he and his friend, the Complainant, came to a park within the Green Arbor Apartment complex located in Houston, Texas . The Appellant was there. The witness and the defendant had been in an altercation on a previous occasion. Jackie claimed the Appellant approached them with a gun tucked in his waist band in front of his shirt. Jackie explained that this was considered a threat in the neighborhood.

He went on to say that the Complainant showed that he also had a gun. The three of them got into a verbal altercation with name calling and cursing. When the Appellant pulled out his gun, Jackie and the Complainant ran; each taking a different path. Jackie said he did not see the shooting but that he did hear gunshots. When he came around the building he saw the Complainant laying on the ground dead. Jackie said he took the gun that the Complainant had and hid it. He said he intended to come back and retrieve that gun because guns were hard to come by. [Reporter's Record, Vol. 3, Pg. 163- 188; Vol 4, Pg. 47-74].

Additional testimony was elicited from Houston Police Department Officer Bob Brown. Officer Brown worked in the Criminal Intelligence Division in a unit called the Cellular Intelligence Unit. Officer Brown testified explaining how cell phone records can be used to track the travel

and approximate location of a cell phone. He described how he used the cell phone records of the Appellant to place the cell phone near the crime scene at the time of the murder. [Reporter's Record, Vol. 4, Pg 169 - 231].

Mr. Juan Garcia gave testimony relating that he was in his apartment when he heard gun shots. He looked out of his glass sliding patio door and could clearly see the playground area. He said he saw a guy with a gun and a boy running. As he watched he saw the boy fall. The guy then walked to the boy, stood over him and partially raised the boy and shot him one or two more times. [Reporter's Record, Vol. 4, Pg. 69 -231].

Additional testimony was presented through:

- the initial responding officer describing the crime scene;

- an Houston Police Department Detective who investigated the case;

- a Crime Scene Unit officer describing how the scene was preserved;

- a ballistics expert who gave some information about guns described the gun Jackie hid as a 22 caliber revolver; and

- A DNA Analyst to explain the lack of usable DNA.

Dr. Roger Milton of the Harris County Institute of Forensic Sciences, formerly the Harris County Medical Examiner's Office, testified regarding his findings from the autopsy he conducted. He described the seven wounds to the body of the Complainant. He pointed out the relative positions of the

body with respect to each wound and which wounds were fatal and non-fatal. [Reporter's Record, Vol. 5, Pg 8 - 54].

Elements of the offense charged are:

- In Harris County, Texas;

- Andre Demont Thompson;

- Did then and there unlawfully;

- Intentionally and knowingly

- cause the death of Thomas Williams;

- by shooting the Complainant sic [Thomas Williams];

- with a deadly weapon, namely a firearm.

- without any consent of any kind.

    Further:

- Andre Demont Thompson;

- Did then and there unlawfully;

- intend to cause serious bodily injury;

- to Thomas Williams;

- and did cause the death of Thomas Williams;

- by intentionally and knowingly;

- committing an act clearly dangerous to human life;

- by shooting the Complainant with a deadly weapon, namely a firearm.

**8.** *Any failure on the part of Appellant's trial counsel to object to fundamental error.*

None. All trial objections are set forth in the Table of Objections in Item 2 above.

**9. Any adverse rulings during the punishment phase on objections or motions.**

All trial objections during the punishment phase are set forth in the Table of Objections in Item 2 above under the column Reporter's Record, Vol.6.

**10. Whether the sentence imposed was within the applicable range of punishment.**

Appellant was found guilty as charged. The 30 year sentence was within the range of punishment for the offense.

**11. Whether the written judgment accurately reflects the sentence that was imposed and whether any credit was properly applied.**

The Judgment jury finding and the Court imposed sentence accurately reflects the sentence and the time credited to his 30 year sentence.

***12. Examination of the record to determine if the Appellant was denied effective assistance of counsel.***

The record was examined to determine if Appellant had been denied effective assistance of counsel and none was found. However, in accordance with the requirements of an Anders brief arguable points of ineffective assistance are included within the following brief.

**STATEMENT OF FACTS**

As must be done in accordance Fernandez v. State, 564 SW2d 771 (Tex. Crim. App. 1978) and Nixon v. State, 572 SW2d 699 (Tex. Crim. App. 1978), viewed in the light most favorable to the verdict, the record reflects the following:

**STATE'S WITNESSES**

**Houston Police Department Officer Rafael Flores**

Officer Flores explained generally how Houston Police Department responds to calls and how a crime scene is secured until the crime scene unit and investigators arrive. He also explained that statements from potential witnesses are sought and taken.

Officer Flores stated that he was on patrol and received a dispatch to 10601 Sabo the Green Arbor Apartment Complex. When he arrived he was directed to the scene by residents where he found the body of the Thomas Williams. There were about fifty people gathered around and he was concerned the crime scene would be contaminated and he tried to move them back. There was a man who said he was a nurse giving the Complainant chest compressions he was allowed to continue his efforts. A paramedic arrived and assisted in preserving the scene. later the investigators arrived. After that Officer Flores left the scene. [Reporter's Record, Vol. 3, Pg. 24 -29; 30-40].

**Houston Police Department Officer Adrienne King**

Houston Police Department Crime Scene Unit Officer King arrived at the scene. Officer King described how she met with Officer Flores, began to take photographs and mark possible items of evidence. This included placing numbered markers at locations where shell casings, etc. were found. She also took photographs of a gun, later determined to be a .22 caliber revolver carried by the Complainant, hidden in bushes.

Officer King stated that she prepared a rough sketch of the area surrounding the crime scene and indicated the relative locations of the items of possible evidence. The State offered State's Exhibits 1-3, 4-44, and 61

through Officer King; all of which were admitted without objection except for State's Exhibit 61. The defense objected to State's 61 on the grounds that it was a photograph of the body of the Complainant which would be highly prejudicial. The objection was overruled.

**Houston Police Department Officer Ivan Ullo**

Houston Police Department Detective Ivan Ullo stated that he and his partner, along with a probationary Detective arrived at the Green Arbor apartment complex. He said that he and his partner began locating possible witnesses while the probationary detective investigated the scene.

Detective Ullo was able to locate a witness named Jackie Bergeron. He also developed a suspect known as Dre., later determined to be the Appellant, Andre Thompson. After repeated attempts to contact the Appellant, Detective Ullo had a warrant issued for the arrest of the Appellant. During his investigation Detective Ullo was able to locate two telephone numbers belonging to the Appellant; one was a land line and the other was a cell phone. The State offered State's Exhibit 62, a photograph of the Appellant. State's 62 was admitted without objection. [Reporter's Record, Vol. 3 Pg 145 - 148].

**Jackie Bergeron**

Jackie Bergeron, a nineteen year old male testified that he and his friend Thomas Williams, the Complainant, went to the Green Arbor apartment complex on October 5, 2012. He described the Complainant as a friend he hung out with a lot who was fifteen years old at the time of his death. The witness described how he and the Complainant were waiting for a ride and were just "chilling out" and talking to some other acquaintances at the playground area in the complex.

He described where they were on State's Exhibit 3A. He then responded to the Prosecutor's question that he"…knew exactly who murdered his friend… I see him right now…" When asked could he point him out and identify him by a piece of clothing he is wearing he responded "Blue in his tuxedo with the little twists in his head. Dude right there. You see him." The witness positively identified the Appellant. [Reporter's Record, Vol. 3, Pg. 163-169].

Jackie Bergeron testified that when he and the Complainant arrived at the playground area he saw the Appellant was there "hanging out". Mr. Bergeron stated that he knew the Appellant hung around the apartment complex and that he had had an altercation, a fist fight, with him before. The witness also stated that he had no bad blood toward the Appellant; he

thought the incident was over. The witness testified that the Appellant approached him and the Complainant with his gun "tucked"; the gun was showing, he had the shirt behind the gun so it was showing. [Reporter's Record, Vol. 3, 169 -174].

The witness explained that when the Appellant approached them the Complainant lifted his shirt to show that he had a gun as if to say they were not worried. "He was like, you know what I'm saying, we ain't worried about your gun. We got guns, too. You know what I'm saying? He showed him just like this. We have guns. We're not worried about your gun." [Reporter's Record, Vol. 3, Pg. 177-179].

The three of them got into a verbal confrontation involving name calling and cursing. The witness stated that at that time he just wanted to fight the Appellant, but when the Appellant put his hand on his gun he thought there was no squabbling, no fighting He told his friend "He is not trying to fight, let's go. The next thing the witness knew gun shots came. he started shooting." He went on to state that that is when they started running; both in the same direction. [Reporter's Record, Vol.3 Pg. 180- 183].

Jackie Bergeron testified that he thought his friend was running with him and when he turned and saw his friend falling. The witness ran in a circle going through a couple of alley ways and came back around because

he thought the Appellant was chasing him. When he came back around the Appellant was gone and he saw his friend on the ground. Mr. Bergeron estimated the time it took for him to run around that circle was approximately thirty seconds.[Reporter's Record, Vol. 3, Pg. 184-185].

Jackie said that when he came around he saw his friend laying on the ground face down in the grass. He was dead. The witness further explained that "When I seen him it was like he was trying to gasp for some air, you know what I'm saying?" The next thing he knew his friend took his last breath and he was gone. He explained that at that time he was crazy. There was nothing he could do. He was sad, mad, and everything. Jackie Bergeron went on to admit that he took the gun from his friend's body and hid it in the immediate vicinity. In closing direct examination he stated that he was 110% sure the Appellant was the man he saw on October 5, 2012. [Reporter's Record, Vol. 3, Pg. 186 -189].

After a lengthy discussion at the bench out-side the jury's presence, and a recess until the next day to allow the Court to review the law and argument of counsel, the Defense was allowed to go into the aggravated robbery committed by the Complainant and Jackie Bergeron's just before the shooting of the Complainant. He also admitted that he was serving [Reporter's Record, Vol.3 Pg. 188- 206; Vol. 4 Pg. 5 - 21].

**Juan Garcia**

Mr. Juan Garcia gave testimony relating that he was in his apartment when he heard gun shots. He looked out of his glass sliding patio door and could clearly see the playground area. He said he saw a guy with a gun and a boy running. As he watched he saw the boy fall. The guy then walked to the boy, stood over him and partially raised the boy and shot him one or two more times. [Reporter's Record, Vol. 4, Pg. 69 -231].

**Houston Police Department Officer Bob Brown**

Additional testimony was elicited from Houston Police Department Officer Bob Brown. Officer Brown worked in the Criminal Intelligence Division in a unit called the Cellular Intelligence Unit. Officer Brown testified explaining how cell phone records can be used to track the travel and approximate location of a cell phone. He described how he used the cell phone records of the Appellant to place the cell phone near the crime scene at the time of the murder. [Reporter's Record, Vol. 4, Pg 169 - 231].

**ISSUES PRESENTED**

**FRIVILOUS APPEAL**

Appellate counsel has a duty to master the trial record, thoroughly research the law, and exercise judgment in identifying the arguments that may be advanced on appeal. *McCoy v Court of Appeals of Wisconsin, Dist. 1, 486 U.S. 429, 438, 108 S.Ct. 1895, 1902, 100 L.Ed. 2d 440 (1988).* In searching for the strongest arguments available, the attorney must be zealous and must resolve all doubts and ambiguous legal questions in favor of his or her client. *Id*. 486 U.S. at 444, 108 S.Ct. at 1905. If the only theories that the attorney can find after a conscientious review of the record and the law are arguments that cannot conceivably persuade the appellate court then the appeal should be considered frivolous. *Id.* 486 U.S. at 436, 108 S.Ct. at 1901.

The undersigned attorney has reviewed the trial court record and has researched the applicable law and has found only two theories which might remotely constitute a basis upon which to appeal this cause. However, in his opinion this theory cannot conceivable persuade the appellate court in favor of reversal or remand of Appellant's cause. The legal theories appellate counsel has found are presented below as Issues Number One and Two.

**ISSUE NUMBER ONE**

THE TRIAL COURT ABUSED IT'S DISCRETION DURING THE TRIAL WHEN IT OVERRULED THE DEFENSE OBJECTION TO IMPROPER JURY ARGUMENT DURING GUILT/INNOCENCE PHASE OF THE TRIAL.

**Argument and Authority**

**Injecting Unsworn Testimony**

During closing argument at the guilt/innocence phase of trial the Prosecutor injected unsworn testimony that was outside the record when he said at [Reporter's Record, Vol. 5, Pg. 105]:

MR. ABRAMS: In her entire career she has never found DNA on a shot shell casing. We don't have pristine bullets. Absolutely, if we had one pristine bullet, that would be wonderful, right? We'd try to get fingerprints or DNA. There is no DNA on spent shell casings.

MR. JOHNSON: Objection, Your Honor; outside the record.

THE COURT: That's sustained

MR. JOHNSON: Your Honor, I'd ask that the jury be instructed to disregard.

THE COURT: Jury is instructed to disregard the last comment.

MR. JOHNSON: Your Honor, we'd ask for a mistrial.

THE COURT: That's denied.

**Mistrial**

A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). The particular facts of the case determine whether an error requires a mistrial. *Id.* A mistrial is an appropriate remedy in extreme circumstances for a narrow class of highly prejudicial and incurable errors. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)*; Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).*

A trial court's denial of a motion for a mistrial is reviewed for an abuse of discretion. *Ocon v. State, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009).* The evidence is viewed in the light most favorable to the trial court's ruling,

considering only those arguments before the court at the time of its ruling and the courts will uphold the ruling if it was within the zone of reasonable disagreement. *Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).*

The Court of Criminal Appeals has determined that the appropriate test for determining whether a trial court abused its discretion by denying a motion for a mistrial is a tailored version of the Mosley test according to which it will balance three factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the trial court); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *See Archie v. State, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007)* (citing *Mosley v. State*, 983 S.W.2d 249, 259&260 (Tex. Crim. App. 1998)); *Hawkins*, 135 S.W.3d at 77 (same).

Due to the extremity of the remedy, a mistrial should be granted only when less drastic alternatives have been explored (i.e., instructing the jury to disregard inadmissible evidence or comment) and residual prejudice yet remains. *See Ocon*, 284 S.W.3d at 884,885. While requesting lesser remedies is not a prerequisite to a motion for mistrial in all situations, when the movant fails to request a lesser remedy, we will not reverse the court's

judgment if the less drastic alternative could have cured the problem. *Ocon*, 284 S.W.3d at 885; *Young v. State*, 137 S.W.3d 65, (Tex. Crim. App. 2004); *see also Wood*, 18 S.W.3d at 648 (concluding that trial court did not abuse its discretion in denying defendant's motion for mistrial when defendant had not requested less drastic remedy of continuance). *See Archie*, 221 S.W.3d at 699,700 (stating that harmless-error analysis under Rule 44.2(a) is improper when trial court sustains objection but denies request for mistrial because only adverse ruling -denial of mistrial is reviewed for abuse of discretion). The only issue with which we are presented is whether the denial of Appellant's motion for mistrial was an abuse of discretion.

Numerous Courts have held that such errors may be cured by an instruction by the trial court to disregard the comment. *See Moore v. State, 999 S.W.2d 385, 405, 406 (Tex. Crim. App. 1999)* (concluding that instruction to disregard cured harm from comment on defendant's failure to testify); *Longoria v. State, 154 S.W.3d 747, 763, 764 (Tex. App.-; Houston [14th Dist.] 2004*, pet. ref'd) (holding instruction to disregard prosecutorial comment on defendant's failure to testify cured error); *Johnson v. State, 83 S.W.3d 229, 231, 233 (Tex. App.-Waco 2002*, pet. ref'd) (holding trial court did not abuse its discretion in denying motion for mistrial because instruction to disregard prosecutorial question regarding defendant's failure

to testify cured error); *Linder v. State*, *828 S.W.2d 290, 301 (Tex. App.-Houston [1st Dist.] 1992*, pet. ref'd) (holding instruction to disregard prosecutorial comment on defendant's failure to testify cured error). When an instruction to disregard is given, it is presumed that the jury followed the instruction in the absence of evidence that it did not. *See Ladd*, 3 S.W.3d at 567 (quoting *Gardner v. State*, *730 S.W.2d 675, 696 (Tex. Crim. App. 1987)*).

In most instances, an instruction to disregard will cure the prejudicial effect. *Wesbrook v. State*, *29 S.W.3d 103, 115 (Tex. Crim. App. 2000)*. An instruction to disregard is presumptively inadequate only in the most blatant cases; only offensive or flagrant improper conduct warrants reversal when there has been an instruction to disregard. *Perez v. State*, *187 S.W.3d 110, 112,113 (Tex. App.-; Waco 2006, no pet.)* (citing *Dinkins v. State*, *894 S.W.2d 330, 356 (Tex. Crim. App. 1995)*).

Although the nature of the right affected by the Prosecutor's insertion of unsworn testimony was serious, the prejudicial effect may be lessened by the absence of flagrancy and persistency. *See Perez*, 187 S.W.3d at 112,113.

The defense requested an instruction and the Court instructed the jury to disregard the last comment. The Prosecutor's argument cannot be said to have been flagrant or persistent. It is presumed that the jury followed the

instruction in the absence of evidence that it did not. *See Ladd*, 3 S.W.3d at 567 (quoting *Gardner v. State*, *730 S.W.2d 675, 696 (Tex. Crim. App. 1987))*. No such evidence of flagrancy or persistence is presented in this case.

**ISSUE NUMBER TWO**

THE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO TRIAL COUNSE 'S FAILURE TO OBJECT TO THE IMPROPER ARGUMENT OF THE PROSECUTOR DURING CLOSING ARGUMENTS IN THE GUILT/INNOCENCE AND PUNISHMENT PHASES OF THE TRIAL, CONSTITUTING A DENIAL OF APPELLANT'S RIGHTS UNDER THE U.S. CONST. AMEND. 6TH AND 14TH, THE TEX. CONST. ART. 1 §§ 13,19 AND TEX. CODE CRIM. PRO. ART. ART 1.04

**Argument and Authority**

**IMPROPER JURY ARGUMENT**

**General**

The First Court of Appeals stated in *Temple v. State, 342 S.W.3d 572 (Tex.App.-Houston [14 Dist.] 2010)*, the purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial in order to arrive at a just and reasonable conclusion based solely on the evidence. *Harris v. State*, 122 S.W.3d 871, 883 (Tex. App.--Fort Worth 2003, pet. ref'd). Proper jury argument generally falls within one of four general areas:

(1) summation of the evidence;

(2) reasonable deduction from the evidence;

(3) answer to argument of opposing counsel; and

(4) plea for law enforcement.

*See also Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *see also Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000)*; Coble v. State*, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993).

A prosecuting attorney is permitted in his argument to draw from the facts in evidence all inferences which are reasonable, fair, and legitimate, but he may not use the jury argument to get before the jury, either directly or indirectly, evidence which is outside the record. *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990) (citing Jordan v. State, 646 S.W.2d 946, 948 (Tex. Crim. App. 1983)).

When jury argument falls outside the approved areas, " it will not constitute reversible error unless it is extreme or manifestly improper or injects new facts harmful to the accused into the trial proceeding." *Temple v. State, 342 S.W.3d 572, 602-603 (Tex. App.--Houston [14th Dist.] 2010), aff'd, 390 S.W.3d 341 (Tex. Crim. App. 2013); see Tex. R. App. P. 44.2(b); Brown, 270 S.W.3d at 570.*

To preserve error based on improper jury argument, the defendant must object to the argument and pursue the objection until the trial court rules adversely. *Tex. R. App. P. 33.1(a)*; *Mendez v. State*, 138 S.W.3d

*334, 341 (Tex. Crim. App. 2004).* The objection must be " a timely, specific request that the trial court refuses." *Young v. State*, *137 S.W.3d 65, 69 (Tex. Crim. App. 2004).*

**Prosecutor's Opinion/Bolstering**

Argument that injects the prosecutor's opinion of a witness' credibility is improper. *Williamson v. State*, *771 S.W.2d 601, 608 (Tex. App.--Dallas 1989, pet. ref'd).* Proper jury arguments may, however, include argument as to the truthfulness of a witness's testimony so long as the argument is based on the evidence presented and reasonable deductions from such evidence, including the complainant's demeanor while testifying. *See Gonzalez, 337 S.W.3d at 483; see also Good, 723 S.W.2d at 736-37* (holding that prosecutor's argument on truthfulness of witness was reasonable deduction from witness's testimonial demeanor, which is considered to be in evidence); *Graves*, 176 S.W.3d at 431 (stating that jury argument may include vouching for witnesses' credibility if it is reasonable deduction from evidence). *Hinosa v State, 433 S.W.3d 742 (Tex.App.-San Antonio 2014)*

The State's closing injected the Prosecutor's opinion vouching for truthfulness of Jackie Bergeron's  testimony when he argued "…he told the truth…". This inserted opinion was not  " based on reasonable deductions from the evidence" and constituted unsworn testimony. *See Gonzalez, 337*

*S.W.3d at 483; see also Wesbrook, 29 S.W.3d at 115; Felder, 848 S.W.2d at 95.* The prosecutor in furtherance of his opinion went on to argue "…he told the truth…", "…he was up front with you…", "He has no reason to come in here and say anything that's not true." [Reporter's Record, Vol. 5, Pg. 106 - 107]. The prosecutor's statements were improper and turned him into an unsworn witness. These assertions that the prosecutor improperly expressed were his personal opinion regarding the credibility of the State's key witness.

In *Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App.1981) (op. on reh'g) The Court stated " In the instant case Virse Hayes was the only witness who could identify Appellant as the person who committed the offense. On cross-examination her credibility was subjected to strong attack. She admitted to having given a different statement about the color of the car used by the robbers, and at one point she stated, '... you know, this robbery has been far back, you know; you can't hardly remember.' The credibility of this witness was critical to the trial of this case. The jury argument injected the prosecutor's personal opinion of her credibility. In view of the trial court's action overruling Appellant's objection, we cannot find harmless error."

In Appellant's case the credibility of the key witness Jackie Bergeron was critical to this case. He was the only witness who could identify Appellant as the person who committed the offense. On cross-examination his credibility was subjected to attack. He admitted to committing an aggravated robbery earlier in the day just before arriving at Green Arbor apartment complex. He admitted that it was he who held the gun on the victims of his earlier crime and that he was on eight years deferred adjudication for that offense. He admitted he still had seven years to serve. He further reluctantly admitted that his conduct on probation was to make himself look good in the eyes of the probation officer. [Reporter's Record, Vol. 4., Pg 17 - 20 ].

As in Menefee, the Prosecutor injected his personal opinion of the credibility of the State's key witness and cannot be considered harmless error. Here, however, the defense failed to raise an objection, request an instruction to disregard or move for a mistrial.

**Striking at Appellant over the shoulder of counsel**

Comments which appear to cast aspersions on the character of defense counsel, and as a result, " strike over counsel's shoulders at the defendant," are not within the zone of proper jury argument. *Nevels v. State*, 954 S.W.2d

154, 158 (Tex. App.--Waco 1997, pet. ref'd).  During the State's closing the prosecutor made the following comments [Reporter's Record, Vol. 5, Pg. 104]:

Mr. Abrams:

....

The defense's job is to come in here and say, "We want more evidence." They do it every day. It's what they do. And personally it offends me when they come in here and try to say you should feel guilty of yourselves to make this decision. It's on you. Absolutely not. It's on him. He's the one that did that. He's the one that took this action. The defense's job is to throw everything up in the air as much as they can and see what sticks. Well, maybe it could be this, maybe it could be that. I think Mr. Johnson said there were just too many maybes. That is not reasonable doubt. It never is.

[Reporter's Record, Vol. 5, Pg. 104/1-12].

Again no objection by the defense.

"This Court maintains a special concern for final arguments that result in uninvited and unsubstantiated accusation of improper conduct directed at a defendant's attorney." *Orona v. State, 791 S.W.2d 125, 128 (Tex.Crim.App.1990)*. Courts have indicated in the past that mild comments may not be erroneous, so long as they can be interpreted as an attack on arguments made by the defense counsel. *Gorman v. State, 480 S.W.2d 188, 190 (Tex.Crim.App.1972)*(Prosecutor said of defense counsel: "Don't let him smokescreen you, he has smoke-screened you enough"). However, that holding has been brought into question by more recent precedent indicating that legitimate arguments by defense counsel cannot serve as a basis for permitting prosecutorial comments that "cast aspersion on defense counsel's veracity." *Dinkins v. State, S.W.2d 330, 357 (Tex.Crim.App.), cert. denied, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995)*(Prosecutor stated that defense counsel "wants to mislead you a little bit by saying....").

The State's argument, as well as inserting unsworn testimony, was a clear effort to inflame the jurors against the Appellant and counsel. This argument was an attempt to discredit defense counsel by insinuating that counsel would try to mislead the jury, "it's what they do" "they do it every day" by "…throwing everything up in the air as much as they can and see

what sticks." The accused is entitled to a fair trial without reference to outside prejudicial influence of the prosecutor's improper argument.

`Again no objection was raised.

**Name Calling**

The prosecutor argued during the punishment phase and introduced unsworn testimony from outside the record to support his improper name calling of the Appellant. In calling the jury's attention to the time aspect of punishment rather than the economic aspect he argued:

And in determining that, you heard the expression, "Motivation determines behavior." What that means is that who you are as a person, decides how you act. I don't know if any of you saw that it was in a video back on CNN, maybe six months, a year ago, something like that, where it was a mother, who had her little baby, and she was holding -- she was at the zoo -- and she holding this baby near the lion cage.

And there was a clear plastic barrier between this baby and the lion, and the baby is

sitting there dancing, moving around, and the lion comes out. It's gnawing right there. Everybody thinks, oh, it's hilarious. It's cute. It's so great mom's filming it, sends it to CNN, everybody watches it. But was that really cute? What would have happened if that glass barrier was not there? That baby is a goner. Because the motivation of a lion, a lion is a killer. A lion is a predator. That lion would have eaten that baby and nothing would have changed.

The defendant is a killer. He is a predator.

[Reporter's Record, Vol. 6, Pg 32].

Not being satisfied with the extent of his vituperation  he went on with:

MR. ABRAMS: Have you seen the movie, Jaws? I mean, for those who haven't seen it, it's a about a man-eating shark, right? And there is a scene in which there on a dock, all right. And Chief Brody, he's one of the main characters in the movie. And they're on this dock,

and he has this gigantic shark hanging right there and he's standing there. He's feeling good. He's pumping his chest. I did a great job. I caught this shark, and there's a group of people around him. They're pumping their chests. Great job, Chief. And then there's a woman that comes up to him. She's dressed in black. She's obviously mourning, slaps him across the face and says, "Why did you let people go in the water if you knew there was a shark?" And she walks away. Now, everyone else gets around and says, "Don't worry, you did a good job. You caught that shark. Don't worry. Don't listen to her. It's not your fault." And he says, "No, it is." This man is a shark. We have to decide if we want to let him back in the waters in our community.

[Reporter's Record, Vol. 6, Pg. 34 -35].

Again no objection was made.

Although there appear to be decisions by this Court approving referring to the defendant as "an animal", we also find that there are many decisions of this Court which have reversed convictions because of such remarks as were made here. See the cases collated in Erisman's Manual of Reversible Errors in Texas Criminal Cases (1956 edition), § 529. Whether such an argument will constitute reversible error, however, must be decided on an ad hoc basis." *Tompkins v. State, 774 S.W.2d 195 (Tex.Crim.App. 1987).*

Again, Appellant did not object to this argument.

Proper jury arguments include summation of the evidence presented at trial and reasonable deductions from that evidence. *Gaddis v. State,* 753 *S.W.2d 396, 398 (Tex.Crim.App.1988).* The prosecutors' references to Appellant as an lion, a predator and a shark were not summations of the witnesses' testimony because none of the witnesses referred to Appellant in those terms. Additionally, arguing a CNN news item and scenes from the movie Jaws, was the introduction of unsworn testimony outside the record was meant to aggravate an already bad argument to harm the Appellant..

These arguments were not reasonable deductions from the evidence. The use of such terms was not warranted in the this case and were an improper deduction from the evidence.

Again the potential for harm in the arguments could arguably have been cured by instructions to disregard if Appellant had objected and requested such instructions. *Logan v. State, 698 S.W.2d 680, 682 (Tex.Crim.App.1985).*

**Ineffective Assistance of Counsel**

Both federal and state constitutions guarantee a defendant the right to counsel. See *U.S. Const. amend. VI*; *Tex. Const. Art. 1, § 10*. Defendants have a right to effective assistance of counsel unless it is affirmatively waived. *Tex. Code Crim. Proc. Ann. art. 42.12, § 21(d) (Vernon Supp. 2008).* "The right to counsel affords an accused an attorney `reasonably likely to render and rendering reasonably effective assistance.'" *Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991)* (quoting *Cannon v. State, 668 S.W.2d 401, 402 (Tex. Crim. App. 1984)*). In analyzing claims of ineffective assistance of counsel, the two-part test announced in Strickland v. Washington, 466 U.S. 668 (1984) is applied. *Ex parte Ellis, 233 S.W.3d 324, 330 (Tex. Crim. App. 2007).* Under this framework, Appellant "must

prove by a preponderance of the evidence that: (1) `his counsel's performance was deficient'; and (2) `there is a `reasonable probability'--one sufficient to undermine confidence in the result--that the outcome would have been different but for his counsel's deficient performance.'" Id. (quoting *Ex parte Chandler, 182 S.W.2d 350, 353 (Tex. Crim. App. 2005)).*

To establish deficient performance, Appellant "must show that `counsel was not acting as `a reasonably competent attorney,' and his advice was not `within the range of competence demanded of attorneys in criminal cases.'" *Id.* (quoting Ex parte Chandler, 182 S.W.3d at 354). Appellant "must overcome the `strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.'" *Id.* (quoting *Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).* Therefore, Appellant "must `overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Id.* (quoting *Miniel v. State, 831 S.W.2d 310, 323 (Tex. Crim. App. 1992)).* "The reasonableness of an attorney's performance is judged according to the `prevailing professional norms' and includes an examination of all the facts and circumstances involved in a case." *Id.* (quoting Strickland, 466 U.S. at 688). "We 'must be highly deferential to trial counsel and avoid the deleterious effects of hindsight.' " *Id.* (quoting Thompson, 9 S.W.3d at 813).

Under the second prong of the Strickland analysis, Appellant "must establish that the constitutionally deficient performance prejudiced his defense--that is, he must show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting Ex parte Chandler, 182 S.W.3d at 354). "`A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 330-31 (quoting Strickland, 466 U.S. at 694). "When making this determination, any constitutionally deficient acts or omissions will be considered in light of the `totality of the evidence before the judge or jury.'" *Id*. at 331 (quoting Strickland, 466 U.S. at 695).

"While this Court normally looks to the "totality of the representation" and "the particular circumstances of each case in evaluating the effectiveness of counsel, *Ex parte Raborn, 658 S.W.2d 602, 605 (Tex.Cr.App.1983)*, we have also found that under some circumstances a 'single error of omission by ... counsel [can] constitute[ ] ineffective assistance'." *Jackson v. State, 766 S.W.2d 504 (Tex.Cr.App.1985)*, modified on other grounds on remand from the U.S. Supreme Court 766 S.W.2d 518 (Tex.Cr.App.1988).

Under these circumstances, Appellant's counsel by failing to object to the improper argument of the State as set forth above rendered ineffective assistance. Moreover, these errors, made at the punishment phase were of a

magnitude significant enough to render applicant's counsel ineffective. Jackson v. State, supra.

**CONCLUSION**

Conclusions as to each of the issues and their subparts raised follows.

**Issue No. 1 Denial of Mistrial**

The nature of the right affected by the Prosecutor's insertion of unsworn testimony was serious, the prejudicial effect was increased by the flagrancy and persistency. *See Perez*, 187 S.W.3d at 112,113. Throughout his closings the Prosecutor's argument in Appellant's case were persistence flagrant .

The defense requested an instruction and the Court instructed the jury to disregard the last comment. It is  presumed that the jury followed the instruction in the absence of evidence that it did not. *See Ladd*, 3 S.W.3d at 567 (quoting *Gardner v. State*, *730 S.W.2d 675, 696 (Tex. Crim. App. 1987))*. No such evidence of flagrancy or persistence is presented in this case.

**Issue No. 2 Ineffective Assistance- Failure to Object to Improper Argument**

In order to preserve any error based on improper jury argument, the defendant must object to the argument and pursue the objection until the trial court rules adversely. Tex. R. App. P. 33.1(a); *Mendez v. State*, *138 S.W.3d 334, 341 (Tex. Crim. App. 2004)*. The objection must be " a timely, specific request that the trial court refuses." *Young v. State*, *137 S.W.3d 65, 69 (Tex. Crim. App. 2004)*. Failure to object waives the complained of error.

"The decision to object to particular statements uttered during closing argument is frequently a matter of legitimate trial strategy." *Kuhn v State, 393 S.W.3d 519 (Tex.App.-Austin 2013),Evans v. State, 60 S.W.3d 269, 273 (Tex.App.-Amarillo 2001*, pet. ref'd) (citing *Hubbard v. State, 770 S.W.2d 31, 45 (Tex.App.-Dallas 1989, pet. ref'd))*. "Thus, evidence of counsel's strategy, if any, is crucial to determining whether he was ineffective" in failing to object to such a statement. *Id.*

If any reasonably sound strategic motivation can be imagined Courts will not find counsel's performance deficient. *See Garcia v. State,* 57 S.W.3d 436, 440 (Tex.Crim.App.2001). One such reasonably sound strategic motivation could have been the desire to avoid drawing additional attention to the prosecutor's opinion. *Cf. Alberts v. State, 302 S.W.3d 495, 506 n. 7*

*(Tex.App.-Texarkana 2009, no pet.)* (concluding that counsel's decision to withhold objection to testimony concerning victim's truthfulness may have been tactical decision to avoid calling jury's attention to objectionable testimony).

Had Appellant's counsel objected to the complained of statements, the prosecutor would have stopped his argument at that point to respond to the objection, and the jury could have focused its attention on the statement. The decision not to object could have been strategically motivated, and without a record demonstrating otherwise, counsel's performance cannot considered deficient. *Kuhn v State, 393 S.W.3d 519, 538 (Tex.App.-Austin 2013)*.Moreover, even assuming that counsel was deficient in failing to object to the statement, the record before this court has failed to show that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different.

Based of the undersigned attorney's review of the record in this case, legal research conducted by said attorney and the argument presented hereinabove, the appeal filed in this cause is wholly lacking in meritorious issues and is frivolous.

Respectfully submitted


_____
Glenn J. Youngblood
Attorney at Law
5555 West Loop South, Ste. 395
Bellaire, Texas 77401
(713) 432-1013
glenlaw@comcast.net
State Bar No. 22217400